UNITED STATES of America, Plaintiff–Appellee,

v.

Alfred James SMITH, Defendant–Appellant.

No. 91–6096.

United States Court of Appeals, Tenth Circuit.

Nov. 15, 1991.

Jerry S. Duncan, Oklahoma City, Okl., for defendant-appellant.

Timothy D. Leonard, U.S. Atty. and Barbara E. Poarch, Asst. U.S. Atty., Oklahoma City, Okl., for plaintiff-appellee.

Before McKAY, Chief Judge, SEYMOUR, and EBEL, Circuit Judges.

SEYMOUR, Circuit Judge.

Defendant Alfred James Smith appeals his twenty-four month sentence for violation of 18 U.S.C. §§ 2 and 1014 (1988) (aiding and abetting and false statements to a federally insured lending institution). Mr. Smith's sentence was imposed pursuant to the United States Sentencing Commission Guidelines Manual (Nov. 1, 1990) (hereinafter Guidelines). The district court adopted the probation officer's offense level calculation under section 2F1.1 of the Guidelines, which governs offenses involving fraud and deceit. The calculation of nineteen reflects a base offense level of six, a nine level enhancement for a loss value of $440,896, and a four level enhancement for Mr. Smith's role as an organizer pursuant to section 3B1.1(a) of the Guidelines.[1] Appendix for Appellant, vol. II, Presentence Report. His sentence was reduced from a guideline range of thirty to

---

1. Also included, but not at issue on appeal, were a two level enhancement for an offense involving more than minimal planning, pursuant to § 2F1.1(b)(2), and a two level reduction for acceptance of responsibility pursuant to § 3E1.1. Appendix for Appellant, vol. II, Presentence Report.

thirty-seven months to the statutory maximum of two years. Mr. Smith challenges the district court's calculation of total loss, and the enhancement of his sentence for his role in the offense. We reverse as to both matters and remand for immediate release because Mr. Smith has served his sentence under the proper guideline range.

## I.

Because Mr. Smith's appeal goes only to the propriety of his sentence, we need not restate the facts in great detail. Briefly, from 1986 to 1989, Mr. Smith operated Handcraft Homes, which constructed and marketed single family residences. In the one count on which he pled guilty, Mr. Smith represented to a federally insured institution that a buyer had made a five hundred dollar earnest money payment on a new home, when in fact he had not. On six different occasions, Mr. Smith represented to federally insured institutions that his customers had made down payments of specified amounts when they had either made substantially smaller down payments or no down payments at all. The cumulative value of the loans advanced on the basis of these misrepresentations was $440,896. Not a single loan was in default at the time of sentencing.

## II.

In its application of Guideline § 2F1.1, the district court adopted the probation officer's position that the appropriate loss valuation for computation of the specific offense characteristic was $440,896. Under section 2F1.1(b)(1)(J), this resulted in a nine level addition to the base offense level of six. To support the increase, the probation officer, and by inference the district court, relied on Guideline Application Note 7 to section 2F1.1, which provides:

"Valuation of loss is discussed in the Commentary to § 2B1.1 (Larceny, Embezzlement, and Other Forms of Theft). In keeping with the Commission's policy

on attempts, if a *probable or intended loss* that the *defendant was attempting to inflict* can be determined, that figure would be used if it was larger than the actual loss."

(Emphasis added).[2] The district court apparently found that there was no actual loss and that the defendant intended and attempted to inflict a loss of $440,896.

 We review factual findings supporting a district court's offense level calculation under the "clearly erroneous" standard. *United States v. Poole*, 929 F.2d 1476, 1483 (10th Cir.1991) (calculation of drug quantity). Other circuits have applied this standard to a district court's calculation of loss under section 2F1.1. *United States v. Haddon*, 927 F.2d 942, 952 (7th Cir.1991); *United States v. Davis*, 922 F.2d 1385, 1388 (9th Cir.1991). Because we find no support in the record for the district court's finding that Smith attempted to inflict a loss in the amount for which he was sentenced, we must reverse the calculation.

 The Guidelines increase a defendant's base offense level sentence for either actual or intended loss, whichever is greater.[3] *United States v. Palinkas*, 938 F.2d 456, 465 n. 19 (4th Cir.1991) ("if a probable or intended loss was greater than the actual loss, the larger figure will be used"); *United States v. Schneider*, 930 F.2d 555, 556 (7th Cir.1991). Where the fraud results in actual loss within the definition provided by the commentary to Guidelines § 2B1.1, that value will be considered for purposes of enhancement under section 2F1.1. Where there is no such loss, or where actual loss is less than the loss the defendant intended to inflict, intended or probable loss may be considered. Application Note 7, Guidelines § 2F1.1; *see, e.g., United States v. Lohan*, 945 F.2d 1214, 1219 (2d Cir.1991) ("Under the Guidelines 'loss' 'may consist of the "probable" loss resulting from the fraud' " (quoting *United States v. Brach*, 942 F.2d 141, 143 (2d

---

**2.** Application Note 2, Guidelines § 2B1.1, defines "loss" to mean "the value of the property taken, damaged, or destroyed."

**3.** Because we find no sufficient evidence of any intended loss here, we do not need to explore whether there might be some limitations on the unrestricted use of intent to establish loss.

Cir.1991)); *Haddon,* 927 F.2d at 951–52; *United States v. Wills,* 881 F.2d 823, 827 (9th Cir.1989) (affirmed enhancement in credit card fraud case on basis of intended loss where intended loss was greater than actual loss).

## A.

### *Actual Loss*

 There is no evidence of any actual loss in the record. Neither the probation officer nor the government contended below, nor does the government contend here, that the $440,896 figure represented the amount of property "taken" by Mr. Smith through his misrepresentations. *See* Application Note 2, Guidelines § 2B1.1. Moreover, the district court made no such finding. Nevertheless, because enhancement could properly be based on actual loss, we review the record to see if the district court's enhancement of Mr. Smith's sentence is justified on the basis of actual loss.

Under the circumstances of this case, we conclude that actual loss should be measured by the net value, not the gross value, of what was taken. Although Mr. Smith did receive all the proceeds from the loans,[4] he delivered to the lenders something in return: the security interest in the houses and the promises of the individual borrowers to repay the loans. Under the Guidelines, net loss must reflect the value of the property securing the loans. The government has the burden of proving the amount of actual loss. Because the government has failed to prove any actual loss in this case, Mr. Smith's sentence may not be enhanced on the basis of actual loss.[5]

This net concept of actual loss comports with common law valuation of fraud. Under the common law, if a defendant deceitfully persuaded a victim to give up something of value, the calculation of loss takes into account any value given to the victim by the defrauder. *See* Dan B. Dobbs, *Remedies* § 9.2 at 594–98 (1973) (various damage formulae for civil fraud based on net rather than gross value); Guidelines § 2F1.1, Application Note 7(a) (Nov. 1, 1991).

Our approach thus distinguishes between naked fraudulent takings, and exchanges of property where the wrongdoer merely misrepresents the value of the consideration advanced. If a fraud is a naked taking of property, the net and gross loss are the same since the victim got nothing of value in return for the property given up. However, if the fraud consists of an unequal exchange of property, the loss or taking consists only of the *difference* in value between what was given and what was obtained. In any event, it is a *net* value that must be used to measure loss. Any other approach ignores reality. *See Schneider,* 930 F.2d at 559; *cf. United States v. Whitehead,* 912 F.2d 448, 452 (10th Cir.1990) (economic loss overvalued). A thief who steals $100,000 is more culpable than a salesman who obtains $100,000 by selling a victim an $80,000 house he fraudulently represents as being worth $100,000. In the latter case, it makes no sense to suggest that $100,000 is the accurate measure of the victim's loss.

*United States v. Johnson,* 941 F.2d 1102 (10th Cir.1991), is not to the contrary. In

---

**4.** The loan proceeds apparently were paid to the individual borrowers rather than directly to Mr. Smith. The borrowers then used the proceeds to purchase homes from Mr. Smith. Because Mr. Smith was convicted of aiding and abetting the fraud of the borrowers, Smith is properly sentenced as a principal. *See Nye & Nissen v. United States,* 336 U.S. 613, 618–19, 69 S.Ct. 766, 769–70, 93 L.Ed. 919 (1949); *United States v. Espinosa,* 771 F.2d 1382, 1398 n. 18 (10th Cir. 1985) (citing *Nye & Nissen*); Guidelines § 2X2.1. We may therefore treat him as the recipient of the fraudulently obtained loan proceeds.

**5.** The burden on the government is not onerous, as loss does not need to be calculated with

exactitude. *See* Guidelines § 2B1.1, Application Note 3 ("loss need not be determined with precision, and may be inferred from any reasonably reliable information available"). Moreover, to the extent that requiring the government to prove actual loss makes it a little more difficult for the government to obtain sentence enhancements under § 2F1.1, this does not seem to be cause for great concern. The government can obtain the basic sentence in any event, Guidelines § 2F1.1(a), and if it seeks to enhance the sentence because of the size of the victim's loss, it is not asking too much for the government to be prepared to prove the actual amount of such loss.

that case we upheld, on the basis of the indictment, a sentence based on the value of several houses that were fraudulently acquired by the defendant. *Id.* at 1113. Although Mr. Johnson lied about his intention to repay the loans on the houses, the indictment alleged that he fraudulently took the *houses*, rather than the value of the loans. That indictment made sense in *Johnson*, where the loans at issue were assumed, and were not the target of the defendant's fraud. Thus, the seller in *Johnson* gave the defendant title to the houses in exchange for a fraudulent promise that the defendant would assume the seller's obligation. In this sense, *Johnson* involved a naked taking in which the seller received nothing in return because the only consideration offered by the defendant was a worthless promise to assume the loans.

Here there is no actual loss. Mr. Smith's misrepresentations resulted in an exchange for value, not a net loss to the lending institutions. The government does not contest Mr. Smith's assertion that the loans were "fully secured by the property involved." Corrected Brief for Appellant at 5. In order to justify enhancement on the basis of actual loss, the government simply must do more.

Our approach is consistent with the new commentary to Guidelines § 2F1.1, promulgated by the Sentencing Commission to "provide[ ] additional guidance with respect to the determination of loss." Guidelines, App. C, at 224 (Nov. 1, 1991). The commentary provides:

> "In fraudulent loan application cases and contract procurement cases where the defendant's capabilities are fraudulently represented, the loss is the actual loss to the victim (or if the loss has not yet come about, the expected loss). For example, if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan *not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered, or can expect to recover, from any assets pledged to secure the loan.*"

Guidelines § 2F1.1, Application Note 7(b) (Nov. 1, 1991) (emphasis added). While our interpretation does not depend on this recent amendment to the Guidelines, its focus on net loss further buttresses our approach. *See United States v. Urbanek,* 930 F.2d 1512, 1514–15 (10th Cir.1991).

## B.

### *Probable or Intended Loss*

█ Admittedly, the district court need not find an actual loss to increase a defendant's offense level under section 2F1.1. "The fact that good police work diminished the actual loss to the employer victim should not affect the determination of the extent of defendant's culpability and responsibility for purposes of sentencing." *United States v. Westmoreland,* 911 F.2d 398, 399 (10th Cir.1990) (recovery of stolen car does not bar its inclusion in loss calculation). As we have noted above, in the absence of actual loss, intended loss may be considered. Application Note 7, Guidelines § 2F1.1. To meet the requirements of the Guideline, however, the record must support by a preponderance of the evidence the conclusion that Mr. Smith realistically intended a $440,896 loss, or that a loss in that amount was probable.

Neither the Order entered by the district court in this case, nor the transcript of the sentencing proceedings indicate that the district court had any factual basis for adopting the probation officer's calculation. Specifically, investigating agent Kevin Markey, of the F.B.I., answered "[n]o," at the sentencing hearing to defense counsel's question: "Did you have any indication when [Smith] made the false statements that he wanted the government to lose money?" Supplemental Appendix to Appellee's Brief at 16. In the same proceeding, on cross-examination, after asserting that the $440,896 figure represented the loss within the meaning of Application Note 7, Probation Officer McKeever cited no factual support for his belief that the total of the six loans constituted the probable or intended loss. *Id.* at 29–31. Indeed, on direct examination, support for Officer McKeever's belief was limited to his af-

firmative response to the question: "Are you satisfied that this 440,000–some–odd dollar figure is the appropriate amount of intended loss?" *Id.* at 25.

This affirmative response, standing alone, is insufficient to support the increase in Mr. Smith's offense level. Mr. Smith specifically stated that "[a]t no time did I intend for a federally insured loan company to lose any money or—or anybody else, for that matter." *Id.* at 36. As of sentencing, no money has been lost on the loans enabled by Mr. Smith's fraud.

On appeal, the government never argues that Smith *intended* to cause loss in the full amount of the loans, only that "the potential that these six loans may eventually go into default is ever present." Brief of Plaintiff–Appellee at 5. However, as Mr. Smith points out, each of the six loans was secured by the house on which the loan was made, and the home buyers have been paying down their loans. Thus, even under a worst case scenario, the total potential loss could not be the full amount of the loans. We do not believe the possibility that some loss might occur on one or more of the six loans in the future amounts to the "probable" loss contemplated by section 2F1.1. The government has simply failed to offer any support for its calculation.

This is not a case like *United States v. Johnson*, 908 F.2d 396 (8th Cir.1990), where the court declined to reduce the loss calculation by the amount recovered by the defrauded bank. "[A] defendant's offense level should not turn on whether or not the banks recovered some of their potential loan losses. Rather, the focus for sentencing purposes should be on the amount of the possible loss which Johnson *attempted* to inflict on the banks." *Id.* at 398 (emphasis added). In *Johnson*, the defendant was a con artist who used falsified identification to obtain loans for herself. *See also Davis*, 922 F.2d at 1391–92 (the defendant operated a scheme to steal property).

The present case is more like the one where "fraud is committed in order to obtain a contract that the defendant might otherwise not obtain, but he means to per-form the contract." *Schneider*, 930 F.2d at 558. In *Schneider*, the court distinguished between two types of fraud:

"One is where the offender—a true con artist (as in *Davis* )—does not intend to perform his undertaking, the contract or whatever; he means to pocket the entire contract price without rendering any service in return. In such a case the contract price is a reasonable estimate of what we are calling the expected loss, and we repeat that no more than a reasonable estimate is required. The other type of fraud is committed in order to obtain a contract that the defendant might otherwise not obtain, but he means to perform the contract (and is able to do so) and to pocket, as the profit from the fraud, only the difference between the contract price and his costs. This is such a case."

*Id.* at 558 (citations omitted).

This is not to say that Mr. Smith's crime must go unpunished. The base offense level of six provided by the Guidelines applies irrespective of loss. Guidelines § 2F1.1(a). As the court in *Schneider* noted: "It is simply that the Guidelines award bonus punishment points for different levels of proven loss beginning with $2,000. The government did not earn a bonus in this case." 930 F.2d at 559. So here, the court may only properly sentence on the basis of the base offense level of six provided by section 2F1.1(a).

### III.

■ Mr. Smith also appeals the four level enhancement assigned by the probation officer for his role in the offense pursuant to section 3B1.1(a). The Guidelines provide for an increase in the offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Guidelines § 3B1.1(a). The government does not offer support for this enhancement on appeal. Instead, like the district court's order, the government assumes the propriety of the nine level adjustment for loss valuation and simply notes that the sentence could have been the same without

the organizer enhancement, because of the requirement that the sentence could not exceed the twenty-four month maximum sentence authorized by statute for the offense of conviction. Brief of Plaintiff–Appellee at 9. In its written Order, the district court stated: "Eliminating the four points assessed as a leader or organizer, the defendant's Guideline imprisonment range would be 18–24 months." *United States v. Smith,* No. CR–90–236–T at 3 (W.D.Okla. filed March 5, 1991). Given our holding above, that is no longer the case. Consequently, we review the district court's application of Guidelines § 3B1.1(a). Because the applicability of a guideline is an issue of law, our review is de novo. *United States v. Reid,* 911 F.2d 1456, 1461 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991); *United States v. Pettit,* 903 F.2d 1336, 1340 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 197, 112 L.Ed.2d 159 (1990).

■ Application of the enhancement for a leadership or organizational role requires consideration of the following factors:

> "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."

Guidelines § 3B1.1, Application Note 3. The inapplicability of these criteria to the relevant conduct at issue here illustrates the inappropriateness of assigning a four level enhancement in this case. While Mr. Smith participated in obtaining each loan, there was no connection at all among the various borrowers. This was no organization. To support enhancement under this Guideline, the government must show that each member of the organization is answerable to the defendant and is under his continuing control. *See Reid,* 911 F.2d at 1465. Mr. Smith's clients were not continually dependent on him. This was not "a criminal activity that involved five or more participants." Guidelines § 3B1.1(a). The four level enhancement was thus inappropriate.

## IV.

As a result of the above analysis, we deduct thirteen levels from the district court's calculation of Mr. Smith's offense level. His corrected offense level is 6. With no criminal history points, the Sentencing Table provides a guideline range of zero to six months imprisonment. Mr. Smith has been incarcerated since March 26, 1991. Six months expired near the end of September, 1991.

Mr. Smith has served his maximum sentence. Consequently, we REVISE his sentence to six months and order him released immediately from custody. The mandate shall issue forthwith.