**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Danilo ABUD–SANCHEZ, aka Danilo
Sanchez–Abud, Defendant–
Appellant.**

No. 91–2221.

United States Court of Appeals,
Tenth Circuit.

Aug. 17, 1992.

Don J. Svet, U.S. Atty. and Robert J. Baca, Asst. U.S. Atty., for plaintiff-appellee.

Michael R. Gibson, El Paso, Tex., for defendant-appellant.

Before SEYMOUR, ANDERSON and BALDOCK, Circuit Judges.

SEYMOUR, Circuit Judge.

Following indictment on various charges involving Medicare and Medicaid fraud, Dr. Danilo Abud–Sanchez pled guilty to one

count of violating 18 U.S.C. § 287.[1] He was sentenced to four months imprisonment in a federal correctional facility and four months in community confinement.[2] He was further ordered to pay certain fines and to submit to a period of supervised release. Dr. Abud–Sanchez appeals the district court's application of the United States Sentencing Commission's Guidelines Manual (hereinafter Guidelines) to his case, arguing that the court erred in concluding that his crimes involved more than minimal planning and in determining the amount of loss involved. We affirm the district court's determination that Dr. Abud–Sanchez engaged in more than minimal planning to further his fraudulent billing scheme. However, we agree with Dr. Abud–Sanchez that the district court's finding of loss lacks factual support in the record, and we therefore reverse and remand for resentencing.

## I.

### *Amount of Planning*

■ The offense level for a crime of fraud or deceit is increased by two levels if more than minimal planning was involved. Guidelines, § 2F1.1(b)(2). "More than minimal planning" is "deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." Guidelines, § 1B1.1, Application Note 1(f) (referenced by § 2F1.1, Application Note 2). A district court's conclusion that a defendant engaged in more than minimal planning in order to carry out an offense is reviewed for clear error. *United States v. Strickland*, 941 F.2d 1047, 1050 (10th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 614, 116

L.Ed.2d 636 (1991); *United States v. Sanchez*, 914 F.2d 206, 207 (10th Cir.1990).

■ The record shows that Dr. Abud–Sanchez submitted numerous false billings involving many different patients, and that his fraudulent practices were aimed at three different federal programs with distinct billing procedures, different regulations, and coverage for different services. Moreover, the nature of the fraud varied: some billings were for services not performed at all; some for services done by a provider other than Dr. Abud–Sanchez; and some for services claimed to be performed when in fact other services were performed. Dr. Abud–Sanchez's staff was instructed to file fraudulent claims and threatened with job loss if they did not do so. He used the services of a friend to bring people in off the streets and from housing projects who were then hospitalized if they were eligible for any federal benefits program. He does not dispute these facts, and the district court was not clearly erroneous in concluding that, when taken together, they demonstrate more than minimal planning.

## II.

### *Amount of Loss*

■ The plea agreement entered into by Dr. Abud–Sanchez and the government provided that he would pay $100,000 to the government "in satisfaction of all civil claims" for the relevant period. Appendix to Brief of Appellant (hereinafter App.) at 56–57. The parties stipulated that the loss to the government for the fraud and deceit offenses was less than $2,000. *Id.* at 58.[3]

---

**1.** Dr. Abud–Sanchez was named in a thirty-five count indictment returned in the District of New Mexico charging violations of 18 U.S.C. § 287 and 42 U.S.C. § 1320a–7b(a)(1). Section 287 criminalizes the filing of false claims against various government subdivisions. Section 1320a–7b(a)(1) provides criminal penalties for specified fraudulent acts involving Medicare or state health care programs. Dr. Abud–Sanchez was later named in a similar indictment returned in the Western District of Texas charging twenty counts of violations of section 287. The Texas indictment was transferred to New Mexico pursuant to Fed.R.Crim.P. 20. As part

of a plea agreement, Dr. Abud–Sanchez pled guilty to one count of the Texas indictment; the remaining counts of the Texas indictment and the entire New Mexico indictment were dismissed.

**2.** Dr. Abud–Sanchez was granted bail pending appeal.

**3.** The agreement explicitly acknowledged that the stipulations contained therein were not binding on the court and that whether to accept the stipulations was solely within the court's discretion. App. at 58.

The probation officer's presentence report based its sentencing recommendation on a total loss of $188,036.41. That figure was compiled from the following sources: (1) information furnished by Blue Cross/Blue Shield of Texas showing an overpayment to Dr. Abud–Sanchez of $6,464.55, App. at 111; (2) a report from the Inspector General of the Department of Defense showing a loss to the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) of $6,324.89, *id.* at 112; (3) a report from the Medicaid Providers Fraud Unit of the State of New Mexico documenting a loss of $28,658.09, *id.* at 113; and (4) a statistical study done by Aetna, the Medicare administrator for New Mexico, estimating the loss to Medicare in New Mexico to be $146,588.88, *id.* at 108.

Both the government and Dr. Abud–Sanchez objected to the presentence report's loss calculation. In its objection, the government stated:

The United States concurs with the defendant's objections to the amount of loss established in the presentence report.

The stated loss of $188,036.41 is a projection which is based on an invalid method since not only was the sample not random, but half of the samples were known to contain errors.

It is extremely difficult if not impossible to establish the exact amount of loss in this case. *Only after a complete audit could a dollar figure be established. Even then every case would have to be reviewed to determine if the error established rose to the level of criminal activity.*

It was *precisely* for this reason that the parties established the figure of $100,000.00 as the amount to *settle all civil and criminal claims.* The United States feels that the amount of $100,000.00 is both a fair and reasonable amount of restitution given the nature of the case and the difficulty encountered in trying to determine the actual amount of loss.

The United States is of the view that for purposes of the guidelines, it would be unfair to assess the total of $100,000 as the amount of loss *since much of the money is in settlement of the civil claims.*

*Id.* at 97–98 (emphasis added in part).

██ Despite these objections and the stipulations of the plea agreement, the court found that the government had sustained losses of $100,000. Rec., supp. vol. II, at 12. The court therefore increased Dr. Abud–Sanchez's base offense level by six levels pursuant section 2F1.1(b)(1)(G) of the Guidelines. We review a district court's loss calculation, for section 2F1.1 enhancement, under the clearly erroneous standard. *United States v. Smith,* 951 F.2d 1164, 1166 (10th Cir.1991); *United States v. Haddon,* 927 F.2d 942, 952 (7th Cir.1991); *United States v. Davis,* 922 F.2d 1385, 1388 (9th Cir.1991). "A finding of fact is 'clearly erroneous' if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." *Cowles v. Dow Keith Oil & Gas, Inc.,* 752 F.2d 508, 511 (10th Cir.1985) (citations omitted), *cert. denied,* 479 U.S. 816, 107 S.Ct. 74, 93 L.Ed.2d 30 (1986). We agree with Dr. Abud–Sanchez that the finding of a loss of $100,000 was clearly erroneous.

██ Enhancement of a defendant's base offense level under section 2F1.1 may be based on either actual or intended loss, whichever is greater. *Smith,* 951 F.2d at 1166. The government has the burden of proving the amount of loss. *Id.* at 1167. For intended loss to suffice, "the record must support by a preponderance of the evidence the conclusion that [Dr. Abud–Sanchez] realistically intended a [particular amount of] loss, or that a loss in that amount was probable." *Id.* at 1168.

The government now argues on appeal that the $100,000 figure was an acceptable determination of loss. Without addressing Dr. Abud–Sanchez's argument that the record lacks evidence of criminal intent, the government contends that the record supports actual losses of approximately $40,000 and that the remaining $60,000 should be considered intended loss. The govern-

ment does not point to any evidence from which the district court might have inferred the scope of Dr. Abud–Sanchez's intent and it does not otherwise support its new appellate contention. Instead, like the district court, it relies on the figures agreed to in settlement by the parties and the loss figure generated by the probation officer.

■ The record simply does not reveal what percentage of these loss calculations stems from Dr. Abud–Sanchez's *criminal* activity as opposed to his *civil* violations.[4] Indeed, the government admitted at the sentencing hearing that "we don't know how much was criminal and how much was civil. That [the $100,000 global settlement figure] was a settlement agreed to avoid a big audit, to avoid a trial and additional cost to the government and to the Defendant, of course." Rec., supp. vol. II, at 14. A loss that supports enhancement of a criminal sentence under the Guidelines cannot be the result of *civil* fraud for which a person cannot be imprisoned. Thus, as the government emphasized in its arguments below, any district court calculation of loss must involve a determination that the defendant's billing error *"rose to the level of criminal activity."* App. at 97 (emphasis added). The district court made no such determination here.

The district court appears to have relied in part as support for its loss calculation on this settlement figure of $100,000, which it awarded as restitution pursuant to the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663 (1988).[5] Neither the $100,000 figure nor the probation officer's much larger figure supports a finding of loss in the amount of $100,000 for section 2F1.1 purposes. As we have pointed out, the only evidence of loss directly attributable to Dr. Abud–Sanchez's criminal conduct is the stipulated amount of $2,000. Indeed, the government noted below that "the total dollar loss as contained in the Texas and New Mexico indictments is only about *approximately $13,000.*" App. at 98 (emphasis added). Thus the total loss caused by those billings which formed the substance of the two criminal indictments is dramatically less than the amount chosen by the district court. Under these circumstances, $100,000 is not a "reasonable estimate of the loss." *See* Guidelines, § 2F1.1, Application Note 8; *cf. United States v. Diamond,* 969 F.2d 961, 966 (10th Cir.1992) (although figures showed overall financial loss to SBA, "they do not necessarily reflect the SBA's loss resulting from [defendant's] false reports").

We therefore hold that the district court's determination of loss was clearly erroneous. As was the case in *Smith,* this result does not mean that Dr. Abud–Sanchez will go unpunished for his criminal behavior. The base offense level of six still applies to Defendant regardless of the amount of loss. " 'It is simply that the Guidelines award bonus punishment points for different levels of *proven loss* beginning with $2,000. The government did not earn a bonus in this case.' " *Smith,* 951 F.2d at 1169 (quoting *United States v. Schneider,* 930 F.2d 555, 559 (7th Cir. 1991)).

Not only did the government not earn a bonus here, it admitted to the district court that it could not prove criminal intent on the part of Dr. Abud–Sanchez beyond the $2,000 stipulated amount. On remand, the district court must sentence in a manner

---

4. The criminal statute, 18 U.S.C. § 287, requires that a defendant make a claim "knowing such claim to be false, fictitious, or fraudulent," and allows for fines and maximum of five years imprisonment. The civil statute, 31 U.S.C. § 3729 (1988), makes liable any person who "knowingly makes ... a false record or statement to get a false of fraudulent claim paid or approved by the government." This statute provides for fines, but no term in prison, and it defines "knowing" so that *"no proof of specific intent to defraud is required." Id.* (emphasis added).

5. We note that because the settlement figure admittedly represents more than the loss caused by the offense of conviction, it is not consistent with the strictures of the VWPA. *See United States v. Cook,* 952 F.2d 1262, 1264 (10th Cir. 1991) (VWPA only authorizes restitution for loss caused by offense of conviction). Of course, the defendant may agree to pay restitution in any amount he chooses.

840

consistent with the record. *See Smith,* 951 F.2d at 1169; *see also United States v. McIlvain,* 967 F.2d 1479, 1481 (10th Cir. 1992) (where both parties agreed record did not support restitution order no further proceedings on remand were required); *United States v. Kelley,* 929 F.2d 582, 587 (10th Cir.) (record failed to support restitution order), *cert. denied,* — U.S. —, 112 S.Ct. 341, 116 L.Ed.2d 280 (1991).

The decision of the district court is REVERSED and the case is REMANDED for resentencing in light of this opinion.