UNITED STATES of America, Plaintiff–Appellee,

v.

Onofre R. GALLEGOS, Defendant–Appellant.

No. 91–2259.

United States Court of Appeals, Tenth Circuit.

Sept. 15, 1992.

Jana M. Miner, Asst. Federal Public Defender, Las Cruces, N.M., for defendant-appellant.

Robert J. Gorence, Asst. U.S. Atty. (Don J. Svet, U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before BALDOCK, SETH and KELLY, Circuit Judges.

PAUL KELLY, JR., Circuit Judge.

Defendant-appellant Onofre R. Gallegos appeals his conviction of making a false statement in regard to a loan application. 18 U.S.C. § 1014. Mr. Gallegos was convicted by a jury and sentenced to twenty-four months imprisonment. On appeal, he argues that the district court erred by (1) not admitting expert testimony; (2) not questioning a juror who revealed that he knew a defense witness; and (3) not determining the actual loss to the bank in sentencing under U.S.S.G. § 2F1.1. He also argues that (4) he received ineffective assistance of counsel due to counsel's conflicts of interest.

In connection with obtaining a $1.25 million line of credit at the First National Bank of Albuquerque, Mr. Gallegos executed a borrower's certificate stating that financial statements furnished to the bank "were true and correct as of the date thereof" and "that no material adverse change in said financial condition reflected herein or the prospects of the same has changed since the date thereof." Mr. Gallegos had furnished the bank with unaudited interim financial statements which indicated that his company, Metro–Tec, had net income of $124,882 on revenues of $1.768 million. He claimed that more current statements were not available.

Contrary to his claim, however, the government's evidence tended to show that he knew that unaudited 1988 fiscal year-end financial statements were available and reflected a loss of $599,209. This loss resulted in negative shareholders' equity of $321,824. III R. 69–70. An accounts receivable clerk at Metro–Tec indicated that in order to comply with loan covenants imposed by Metro–Tec's prior bank, Mr. Gallegos instructed her to inflate the accounts receivable by overstating the amount actually billed to customers. III R. 45–46. The unaudited interim statements may have been a product of this overstatement. III R. 110. The bank's credit analyst testified that the change in financial status between the two statement dates was material: "No one would give a loan based on [the year-end financial statements.]" III R. 106.

I.

■ Mr. Gallegos attempted to introduce expert testimony that the financial condition reflected on the financial statements understated the true worth of existing and prospective government contracts Metro–Tec would complete. The district court declined to admit the testimony because it dealt with forecasted information and was not relevant to whether the financial condition had changed adversely between the interim and year-end dates.

The district court was correct. Section 1014 required the government to prove that Mr. Gallegos knowingly made a false material statement for the purpose of influencing the bank's action. *See Williams v. United States*, 458 U.S. 279, 284, 102 S.Ct. 3088, 3091, 73 L.Ed.2d 767 (1982); *United States v. Smith*, 838 F.2d 436, 439 (10th Cir.1988), *cert. denied*, 490 U.S. 1036, 109 S.Ct. 1935, 104 L.Ed.2d 407 (1989). The mere fact that the financial statements might be inaccurate under a different system of valuation is irrelevant. The issue is whether Mr. Gallegos falsely stated that the interim financial statements of Metro–

Tec were correct and that no material adverse change in financial position had occurred. The crime is not that the interim financial statements were incorrect or that the financial position of Metro–Tec had changed; rather, it is the false statement to the contrary. *See United States v. Kingston*, 971 F.2d 481, 488 n. 3 (10th Cir.1992). The district court did not abuse its discretion in excluding this testimony.

## II.

Mr. Gallegos next argues that the district court erred by not questioning a juror who notified the court before deliberations that he was acquainted with a defense witness (Mike Gallegos). After the witness testified, the juror sent the court a note stating: "I have personal knowledge of Mike Gallegos at UNM when he was student body president. Is it fair for me to bring up during deliberation?" The district court declined to question the juror, reasoning that defendant could have addressed the point during voir dire. Instead, the court sent back the juror's note with a "no" answer. When Mr. Gallegos subsequently moved to excuse the juror, the district court conducted voir dire of the juror, asking questions recommended by both counsel. VI R. 625. The juror indicated that he had *not* discussed the matter with the other jurors and that his personal knowledge would not prevent him from being fair and impartial. The district court then invited objections with the remark, "Satisfied, everybody?" VI R. 626. No objection followed.

■ Mr. Gallegos now contends that the district court should have asked whether the juror's knowledge formed a basis for an opinion, either positive or negative, about the defense witness so that Defendant could have explored a challenge for cause. On proper objection, our review of a district court's questioning concerning juror qualifications is deferential. *See United States v. Berryhill*, 880 F.2d 275, 278 (10th Cir.1989), *cert. denied*, 493 U.S. 1049, 110 S.Ct. 853, 107 L.Ed.2d 846 (1990). Given that this point was never raised below, our review is for plain error. Fed.

R.Crim.P. 52(b); *United States v. Young*, 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985). Keeping in mind the juror's responses to the judge's questions and the juror's mere acquaintance with a defense witness, we are hard pressed to see how the district court's conduct constituted error, let alone plain error. *See United States v. Bohle*, 475 F.2d 872, 876 (2d Cir.1973).

## III.

In computing the offense level under U.S.S.G. § 2F1.1(b)(1)(J), in effect at the time of the offense, *see* U.S.S.G. app. C at 70 n. 154 (Nov.1991), the district court enhanced the base offense level of six by nine levels, reasoning that the loss in this fraud case was $1.25 million or the entire line of credit. The presentence report indicates that $211,482 was repaid. In a civil action, the bank sought to recover on the note from various parties including Mr. Gallegos. The civil defendants filed a counterclaim predicated on a lender liability theory. Thereafter, the bank settled its claims for a total of $336,661 and the civil defendants dismissed their counterclaim. A balance of $312,340 remains on the settlement judgment with payments commencing on June 30, 1992.

■ We review a district court's determination of a U.S.S.G. § 2F1.1 loss under the clearly erroneous standard, but the factors a district court properly may consider is reviewed de novo. *United States v. Levine*, 970 F.2d 681, 689 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 289, 121 L.Ed.2d 214 (1992). Mr. Gallegos argues that any loss under U.S.S.G. § 2F1.1(b) must be reduced by the amount repaid and the maximum loss to the bank is limited to the amount of the civil settlement agreement. In the district court, Mr. Gallegos argued that there has been no loss to the bank as a result of the civil settlement agreement. I R. doc. 47 at 5. He maintains that he intended to repay the loan.

■ Subsequent to sentencing, we decided *United States v. Smith*, 951 F.2d 1164 (10th Cir.1991). We acknowledged that the greater of actual or intended loss may be

used to enhance, but "that actual loss should be measured by the net value, not the gross value, of what was taken." *Id.* at 1166. *Accord* U.S.S.G. § 2F1.1 comment. (n. 7(b)); *United States v. Gennuso,* 967 F.2d 1460, 1461–63 (10th Cir.1992). *Smith* involved mortgage loans extended in part on a false representation that $500 earnest money payments had been made by borrowers. The loans were secured by real property and none were in default. 951 F.2d at 1166. Under those circumstances, the government failed to prove actual loss. *Id.* at 1167.

Here, the bank has reduced its claim against Mr. Gallegos to the amount of the settlement agreement. It would be incongruous to hold that the actual loss to the bank was greater than the amount the bank now seeks to collect. The settlement agreement may be viewed as an offset; Mr. Gallegos has foregone his claims against the bank in exchange for a reduction of the debt owing the bank, a debt which is apparently to be paid in installments.

The district court did not specify whether the $1.25 million represented an actual or an intended loss. In light of *Smith,* we remand for this determination. *See United States v. Haddock,* 956 F.2d 1534, 1554, *on reh'g,* 961 F.2d 933 (10th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 88, 121 L.Ed.2d 50 (1992). Should the district court determine that the actual loss is appropriate, it should consider the likelihood of repayment of the settlement amount and sentence accordingly.

### IV.

■ Mr. Gallegos next contends that he received ineffective assistance of counsel at trial because his counsel's daughter and law partner represented a key government witness, Mr. Littlefield, during Mr. Littlefield's immunity negotiations and subsequent testimony in this trial. Assuming without deciding that law partners should be considered as one lawyer, *Burger v. Kemp,* 483 U.S. 776, 783, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987); *Martinez v. Sullivan,* 881 F.2d 921, 930 (10th Cir.1989), *cert. denied,* 493 U.S. 1029, 110 S.Ct. 740,

107 L.Ed.2d 758 (1990), a defendant is entitled to a presumption of prejudice if he can prove that his lawyer " 'actively represented conflicting interests' and 'that an actual conflict of interest affected his lawyer's performance.' " *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984) (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 350, 348, 100 S.Ct. 1708, 1719, 1718, 64 L.Ed.2d 333 (1980)). *See also United States v. Bowie,* 892 F.2d 1494, 1501–02 (10th Cir.1990); *United States v. Winkle,* 722 F.2d 605, 611–12 (10th Cir.1983). Of course, conflict-of-interest claims may be waived, *Holloway v. Arkansas,* 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 1178 n. 5, 55 L.Ed.2d 426 (1978); *Moore v. United States,* 950 F.2d 656, 660 (10th Cir.1991), and we lack a record indicative of the professional relationship between trial counsel and his daughter. Normally, we do not consider ineffectiveness claims raised for the first time on appeal. *Beaulieu v. United States,* 930 F.2d 805 (10th Cir.1991). But because we are remanding this case, we deem it appropriate for the district court to consider defendant's ineffective assistance claim, notwithstanding that it was not raised below.

REMANDED.