**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William Earl MOORE, Defendant–**
**Appellant.**

**No. 94–8099.**

United States Court of Appeals,
Tenth Circuit.

May 23, 1995.

Submitted on the briefs: *

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the deter-mination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause therefore is or-dered submitted without oral argument.

Leonie H. Grant, Office of the U.S. Atty., Cheyenne, WY, for plaintiff-appellee.

Michael R. O'Donnell, Office of the Federal Public Defender, Cheyenne, WY, for defendant-appellant.

Before SEYMOUR, Chief Judge, McKAY and HENRY, Circuit Judges.

HENRY, Circuit Judge.

Appellant William Earl Moore challenges the district court's enhancement of his sentence for aiding and abetting credit card fraud. We reverse and remand for resentencing.

It is undisputed that Mr. Moore and Michael Benjamin used stolen credit card numbers to finance a trip across North America. Mr. Moore and Mr. Benjamin retrieved credit card numbers from trash bins and then used these credit card numbers to rent hotel rooms, cars, aircraft, and limousines, and to buy food, clothing, and other goods. They abandoned two rental cars during the trip and were arrested in Casper, Wyoming while driving a Chevrolet pickup truck they had fraudulently rented in Cranbrook, British Columbia.

Mr. Moore pleaded guilty to aiding and abetting credit card fraud in violation of 18 U.S.C. § 1029(a)(2) and 18 U.S.C. § 2. The government sought a five level enhancement under United States Sentencing Guidelines (U.S.S.G.) § 2F1.1, contending that the amount of the loss involved in the offense exceeded $40,000. In preparing Mr. Moore's presentence report, the government relied on a statement Mr. Benjamin gave to the government summarizing the events of the trip. The presentence report calculated the amount of loss to include the market value of the two abandoned rental cars, the Chevrolet pickup truck that Mr. Moore and Mr. Benjamin were driving when they were arrested, and the other goods and services that Mr. Moore and Mr. Benjamin had obtained by using stolen credit card numbers.

Mr. Moore objected to the government's amount of loss calculations, arguing that Mr. Benjamin's statement was unreliable because it was hearsay offered in exchange for leniency in sentencing and that the amount of loss should not include the market value of the three rented vehicles. Mr. Moore argued that because the rented vehicles had been recovered, only the rental fees should be included in the government's calculations.

The district court rejected Mr. Moore's arguments. As to the amount of the loss, the court found that "the vehicles involved have at the time of their taking for conversion had a market value in excess of $30,000." Rec. vol. II, at 11. The district court also stated that it had presided over Mr. Benjamin's plea and sentencing hearings and that it was entitled to rely upon those statements in sentencing. The district court concluded that the total amount of the loss was over $40,000 and accordingly sentenced Mr. Moore to a fourteen month term of imprisonment followed by three years of supervised release.

■ Mr. Moore argues on appeal that the government failed to introduce evidence sufficient to support an enhancement under U.S.S.G. § 2F1.1 for a loss exceeding $40,000. The government has the burden of proving by a preponderance of the evidence that a particular sentence enhancement is warranted. *United States v. Brown*, 995 F.2d 1493, 1500 (10th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 353, 126 L.Ed.2d 317 (1993). However, the district court may rely upon hearsay if the evidence bears indicia of reliability. *United States v. Cody*, 7 F.3d 1523, 1527 (10th Cir.1993); *United States v. Shewmaker*, 936 F.2d 1124, 1129 (10th Cir. 1991), *cert. denied*, 502 U.S. 1037, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992). We review the district court's determination of a U.S.S.G. § 2F1.1 loss under the clearly erroneous standard, but we review the factors the district court may properly consider de novo. *United States v. Galbraith*, 20 F.3d 1054, 1058 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 233, 130 L.Ed.2d 157 (1994).

■ We find no error in the district court's consideration of Mr. Benjamin's statements. It is well established that hearsay can be used in sentencing if the hearsay is reliable. *Cody*, 7 F.3d at 1527; *Shewmaker*, 936 F.2d at 1129. Moreover, the sentencing court "may consider, without rehearing, evidence introduced at the trial of a codefendant

if that evidence is relevant to the issue disputed at the sentencing phase, and if the sentencing judge also presided over the co-defendant's trial." *United States v. Fetlow*, 21 F.3d 243, 250 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 456, 130 L.Ed.2d 365 (1994). At Mr. Moore's sentencing, the district court expressly referred to Mr. Benjamin's in-court statements. In addition, Mr. Benjamin's statements were against his interest because he admitted his own involvement in the scheme. *See* 2 John W. Strong et al., *McCormick on Evidence* § 316, at 336 (4th ed. 1992) (explaining why statements against interest are reliable). Given Mr. Benjamin's statements, we cannot say that the information upon which the district court relied was not sufficiently reliable.

■ The district court's use of the market value of the rented vehicles in its loss calculations presents a more difficult question. The court based its calculations on the commentary accompanying § 2F1.1, which establishes base offense levels for crimes involving fraud or deceit. Under § 2F1.1, base offense levels are calculated using actual loss, but "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." U.S.S.G. § 2F1.1, comment. (n. 7). *See generally United States v. Smith*, 951 F.2d 1164, 1166–69 (10th Cir.1991); *United States v. Whitehead*, 912 F.2d 448, 451–52 (10th Cir.1990). The commentary to § 2F1.1 refers to the calculation of loss under § 2B1.1, the guideline provision for larceny, embezzlement, and other forms of theft. The commentary to that section defines loss as "the value of the property taken, damaged, or destroyed." U.S.S.G. § 2B1.1, comment. (n. 2). It further explains: "Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue.... In the case of a defendant apprehended taking a vehicle, the loss is the value of the vehicle even if the vehicle is recovered immediately." *Id.*

At Mr. Moore's sentencing hearing, the district court accepted the government's contention that under § 2F1.1, § 2B1.1, and the accompanying commentary the full market value of the three rented vehicles should be used in calculating the amount of the loss. However, we find the district court's reliance upon the commentary to § 2B1.1 inconsistent with our cases interpreting § 2F1.1.

In analyzing the proper methods for calculating loss under § 2F1.1, we have focused on the economic reality of the subject transactions. For example, in *Smith*, we distinguished "naked fraudulent takings" from "exchanges of property where the wrongdoer merely misrepresents the value of the consideration advanced." *Smith*, 951 F.2d at 1167. In the latter instance, we found that "the loss or taking consists only of the *difference* in value between what was given and what was obtained." *Id.* In *Whitehead*, we held that the sentencing court erred in including the entire value of a house in its loss calculations when the defendant had used false documents to obtain an option to purchase the house, but had not actually exercised the option. *Whitehead*, 912 F.2d at 452. We observed that "[the defendant] could elect whether or not to exercise the option, and it was far from certain that he ever would have been successful in doing so or that the full value of the home would have been lost." *Id.* We concluded that the loss should have been calculated by using the value of the option rather than the value of the entire house. *Id.*

*Smith* and *Whitehead* suggest that when a defendant uses a stolen credit card number to rent a vehicle, the amount of the loss under § 2F1.1 is not necessarily the market value of the vehicle in question. In instances in which no evidence is presented as to actual losses sustained by victims of the fraudulent scheme, the determinative factor is the loss that the defendant intended to inflict. *See Smith*, 951 F.2d at 1168 (holding that "the record must support by a preponderance of the evidence the conclusion that Mr. Smith realistically intended a $440,896 loss, or that a loss in that amount was probable"). *Cf.* 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.5(b), at 359 (1986) ("One who takes another's property intending at the time he takes it to use it temporarily and then return it unconditionally ... lacks the intent to steal required for larceny").

In contrast, if the defendant did not intend to return the vehicle, then a loss calculation based on the market value of the vehicle is warranted. The sentencing court may properly infer such intent if the defendant is indifferent or reckless with respect to the owner's recovery of the vehicle.[1] "[I]t has long been the case that 'if one takes another's property intending to use it recklessly and then abandon it, the obstacles to its safe return are such that the taker possesses the required intent to steal.'" *United States·v. Cruz–Santiago*, 12 F.3d 1, 2 (1st Cir.1993) *cert. denied,* —— U.S. ——, 114 S.Ct. 1853, 128 L.Ed.2d 477 (1994) (deciding robbery case and quoting LaFave & Scott, *supra,* § 8.5, at 360–61); *see also State v. Piscattano,* 32 Conn.Supp. 649, 352 A.2d 783, 785 (Ct.App.Sess.1976) (holding that the factfinder may conclude that recovery is not likely when the car is left on street with keys in the car); *Brown v. State,* 804 S.W.2d 566, 570 (Tex.Ct.App.1991) (holding that the jury may find intent to permanently deprive the owner where the defendant parked and abandoned a vehicle in a vacant lot with the windows down).

In this case, Mr. Moore pleaded guilty to credit card fraud, not theft. In addition, the government presented no evidence of actual losses sustained by the owners of the rented vehicles. The relevant inquiry is therefore whether Mr. Moore intended to deprive the owners of the full value of the vehicles. However, we are unable to determine from the record whether Mr. Moore intended to inflict a loss that included the entire fair market value of each of the rented vehicles. The record indicates only that Mr. Moore and Mr. Benjamin rented one car in Pendleton, Oregon and left it in Portland, Oregon, that they rented a second car in Bellingham, Washington and left it in Cranbrook, British Columbia, and that they were using the rent-

ed pickup truck when they were arrested. In addition, there is very limited evidence surrounding the circumstances under which the cars were abandoned in Portland and Bellingham.[2] Finally, the district court made no findings as to whether the abandonment was either reckless or indifferent and therefore sufficient to supply the requisite intent. In the absence of such evidence or specific findings by the district court, the record does not support the district court's use of the entire market value of the three vehicles in calculating the amount of loss under § 2F1.1.

Accordingly, the decision of the district court is REVERSED. The case is remanded for additional findings and resentencing in accordance with this Opinion.

---

1. We are not persuaded by the government's suggestion that Application Note 2 to § 2B1.1 requires the sentencing court to use the market value of the rented vehicle in all cases. Although that note states that the amount of the loss when the defendant is "apprehended taking a vehicle" is "the value of the vehicle even if the vehicle is recovered immediately," U.S.S.G. § 2B1.1, comment. (n.2), so broad an interpretation of the commentary in the fraud context would abrogate the "economic reality" analysis adopted in our § 2F1.1 cases.

2. These circumstances may reveal the loss Mr. Moore intended to inflict when he rented the vehicles. For example, if Mr. Moore left the cars in the parking lots of the rental car companies in other cities, there may be insufficient evidence to include the entire value of the vehicles in calculating the amount of loss.