**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 5 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

vs.

ANTHONY A. NICHOLS,

        Defendant - Appellant.

No. 99-6335

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 99-CR-34)

Submitted on the briefs:[*]

Vicki Zemp Behenna, Esq., Assistant United States Attorney and Daniel G.
Webber, Jr., Esq., United States Attorney, Oklahoma City, Oklahoma, for Plaintiff
- Appellee.

Rand C. Eddy, Esq., Eddy & Jones, P.C., Oklahoma City, Oklahoma, for
Defendant - Appellant.

Before **SEYMOUR**, Chief Judge, **KELLY**, and **HENRY**, Circuit Judges.

---

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G).  The cause therefore
is ordered submitted without oral argument.

**KELLY**, Circuit Judge.

_____

Petitioner-Appellant Anthony Allan Nichols pled guilty to using a false social security number with the intent to deceive for the purpose of obtaining checking accounts at two Oklahoma banks in violation of 42 U.S.C. § 408(a)(7)(B). He was sentenced to twenty-one months imprisonment, three years supervised release, and ordered to pay restitution of $2,530.89. Mr. Nichols appeals the sentence imposed, alleging that the trial court erred in overstating the loss that Mr. Nichols intended to impose and that it erred in denying Mr. Nichols a two-level reduction for acceptance of responsibility. We affirm in part, reverse in part, and remand to the trial court for resentencing.

Background

Early in 1997, Mr. Nichols found himself with a poor credit history, due, in part, to the failure of a business venture he had started. He responded to a newspaper advertisement offering a manual which gave instructions on how to obtain a second social security number. Following the manual's instructions, Mr. Nichols applied for an Employer Identification Number (EIN) with the Internal Revenue Service. Mr. Nichols was assigned the EIN of 57-1058456, and began representing this as his social security number. In what he claims was an effort to reestablish a good credit history, Mr. Nichols began using this number in

applications for loans and credit cards. Using this and other false social security numbers, Mr. Nichols obtained a mortgage and bought a house, attempted to purchase a car on credit, opened credit card accounts and various bank accounts, and secured a home-repair loan through a financing corporation. In calculating his offense level under the Guidelines, the trial court determined that the specific offense characteristics warranted a six-level addition pursuant to USSG §2F1.1(b)(1)(G), because Mr. Nichols intended to cause loss in excess of $70,000 but less than $120,000. The district court rejected Mr. Nichols' contention that he did not intend to cause any losses, finding that his actions belied such intent and rejecting his testimony as incredible. Specifically, the court relied upon the following facts: (1) Mr. Nichols used four different social security numbers, including his daughter's social security number on one occasion, (2) on over half the credit applications, he used some variation of his true name (Anthony Allan Nichols), i.e., Allen A. Nichols, or Allan A. Nichols, (3) he defaulted on several of the loans, and the presence of collateral does not negate his intent, and (4) but for the false social security numbers, the loans would not have been made.

Mr. Nichols objected to the trial court's calculation, and appeals on this basis. We consider various challenged components of the calculation individually. We then address Mr. Nichols' contention that the trial court erred in denying him a reduction of his offense level for acceptance of responsibility.

- 3 -

## Discussion

We review the trial court's application of the Sentencing Guidelines de novo, but review its underlying findings of fact for clear error. See United States v. Burridge, 191 F.3d 1297, 1301 (10th Cir. 1999). The trial court's factual findings will be accepted unless the record does not support them or unless, "'after reviewing all the evidence, we are left with the definite and firm conviction that a mistake has been made.'" United States v. McAlpine, 32 F.3d 484, 488 (10th Cir. 1994) (citation omitted). We review the denial of a reduction for acceptance of responsibility for clear error. See id. at 489.

Sentencing Guideline § 2F1.1 governs crimes involving fraud and deceit, including violations of 42 U.S.C. § 408(a)(7)(B). Under this guideline, the offense level is calculated based in part on the dollar value of the loss involved in the criminal conduct. See USSG § 2F1.1(b)(1). If an intended loss can be determined and it exceeds the actual loss, the court should use the intended loss to calculate the defendant's offense level. See id., comment. (n.8); United States v. Smith, 951 F.2d 1164, 1166 (10th Cir. 1991). The reason the intended loss figure is used, even if it is significantly greater than actual loss, is to measure the magnitude of the crime at the time it was committed. See United States v. Janusz, 135 F.3d 1319, 1324 (10th Cir. 1998). The fact that a victim has

recovered part of its loss after discovery of a fraud does not diminish a defendant's culpability for purposes of sentencing. See id. (citing United States v. Johnson, 941 F.2d 1102, 1114 (10th Cir. 1991); United States v. Westmoreland, 911 F.2d 398, 399 (10th Cir. 1990)). It is not error for a district court to count the full amount taken through fraud as an intended loss, where the victim recovers the loss through a civil suit, as opposed to through any voluntary action on the part of the defendant. See Burridge, 191 F.3d at 1301; United States v. Pappert, 112 F.3d 1073, 1079 (10th Cir. 1997). Similarly, the mere presence of collateral securing an item that was fraudulently obtained does not automatically reduce the loss calculation under § 2F1.1 where it can be shown that the defendant intended to permanently deprive the creditor of the collateral through concealment. See United States v. Banta, 127 F.3d 982, 984 (10th Cir. 1997). At the same time, our cases have insisted that calculations under § 2F1.1 accord with "economic reality," particularly considering the value of security given when the loan was made. See United States v. Moore, 55 F.3d 1500, 1502 (10th Cir. 1995); Smith, 951 F.2d at 1167-69.

Mr. Nichols contends that the district court erred in finding that he intended to inflict the various losses attributed to him. Although we defer to the district court's factual findings, see United States v. Ensminger, 174 F.3d 1143, 1145 (10th Cir. 1999), the government bears the burden of proving the amount of loss.

See McAlpine, 32 F.3d at 487. "To meet the requirements of the Guideline, . . . the record must support by a preponderance of the evidence the conclusion that [the defendant] *realistically intended* a [particular] loss, or that a loss in that amount was *probable*." Smith, 951 F.2d at 1168 (emphasis added). We agree with Mr. Nichols that the record does not support such a finding in several of the instances in which the trial court found he intended to cause a loss, rendering the trial court's findings in those instances clearly erroneous.

A. Note Secured by Home Mortgage

In September 1997, Mr. Nichols purchased a home in Oklahoma City. He executed an FHA mortgage securing the loan amount of $87,515. In his application, Mr. Nichols represented his social security number to be 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, which was different from his employer identification number, 57-1058456, the next to last two digits being transposed. He also identified himself as Allan A. Nichols, rather than Anthony A. Nichols. The rest of the information Mr. Nichols put on his application, such as his address and telephone number, was valid. Several months after purchasing the home, Mr. Nichols fell behind on his mortgage payments. He was unable to make payments for approximately one year, during which time he filed for Chapter 13 bankruptcy for the purpose of paying the arrearage and resuming monthly payments, so that he could keep his residence.

The trial court found that Mr. Nichols intended to deprive the lender of the full amount of the loan, $87,515. This finding is simply not supported by the record. The government failed to prove by a preponderance of the evidence that Mr. Nichols either realistically intended such a loss, or that a loss in that amount was probable. The home loan was fully secured by the mortgage, and in 1997, the home had been appraised at $95,000. Although the district court determined that the availability of collateral does not reduce the loss calculation, we feel it is error to ignore the contemporaneous exchange of security for the note in considering the economic reality of the transaction and any intended loss in excess of the actual loss. The security of the loan is a valid consideration in evaluating a defendant's realistic intent and the probability of inflicting the loss. See Pappert, 112 F.3d at 1078; Smith, 951 F.2d at 1169.

In Banta, the defendant purchased two vehicles worth almost $50,000 by submitting fraudulent loan applications. The trial court found an intent to defraud for the full $50,000 amount, despite the fact that the loans were secured by the vehicles. See id., 127 F.3d at 983. But several factors distinguish Banta from this case. The first is the mobility of vehicles as opposed to a residence. In Banta, if defendant had desired, he could have permanently deprived the bank of the collateral by concealing the vehicles, something that could not be done with a house. Even considering the mobility of vehicles, we do not presume intent to

cause a total loss. See Moore, 55 F.3d at 1503. Second, there was evidence in Banta that the defendant likely intended such concealment. Not only did he provide a false social security number on the loan application, he also used an incorrect address, telephone number, and place of employment, making locating the vehicles quite difficult. During the time he possessed the vehicles, he never made a single legitimate payment on the loan. The defendant made only one payment with a worthless check. See Banta, 127 F.3d at 984.

In this case, it is uncontroverted that an incorrect social security number was used and we must accept the district court's findings that Mr. Nichols' transposition of his first and middle names is indicative of an intent to deceive, and that the loan would not have been made but for the false information. The fact that the loan was made under these circumstances, however, does not mean that Mr. Nichols intended to deprive the lender of the full amount of the loan. Were that the case, every false loan application would result in an intended loss in the full amount of the loan. That surely is not the case under the Guideline and our cases.

Mr. Nichols provided mostly correct information on his loan application, and he made a number of payments on the house. While it is true that he did not make payments on the house for one year pending Chapter 13 bankruptcy, he continued making payments even after learning that he was going to be

prosecuted for using a false social security number. The house was, and continues to be, the sole residence for Mr. Nichols and his family. Nowhere did the government demonstrate that Mr. Nichols intended to deprive the lender of the full value of its loan, or that such a deprivation was probable. The government theorized in its brief that Mr. Nichols' use of a false social security number and the transposed name made it "very possible that Nichols could obtain the full proceeds of any sale of the mortgaged property to a third party and at the same time put the collateral beyond the reach of the lender." Aplee. Br. at 13. This is sheer speculation, not supported by any facts in the record, and certainly not enough to convince us that a loss in the amount of $87,515 was "probable." Smith, 951 F.2d at 1168. Accordingly, we remand to the trial court with instructions to recalculate Mr. Nichols' offense level without including the mortgage amount as an intended loss.

B.  Vehicle Loan

The trial court also found that Mr. Nichols intended to cause a loss in the amount of $10,209 in connection with his purchase of a vehicle in April 1998. The trial court found that Mr. Nichols intended to deprive the lender of the full value of the vehicle. As with the house, this finding is not supported by the record.

In March 1998, Mr. Nichols applied for a vehicle loan. In the application,

he used a false social security number and his middle name rather than his first name. All other information was correct, such as his address, place of employment, and home and business telephone numbers. He also made a $1,000 down payment. After taking possession of the vehicle and driving it for three weeks, Mr. Nichols was notified by the dealer that the lender would not accept the contract. He promptly and voluntarily returned the vehicle undamaged. No actual or intended loss for this transaction occurred.

In April 1998, Mr. Nichols signed a contract with another lender, made an additional down payment of $792, and chose another vehicle. After approximately three weeks, the lender discovered the false social security number and repossessed the vehicle. The government failed to demonstrate any intent on the part of Mr. Nichols to deprive the lender of the value of the vehicle. No evidence was presented showing that Mr. Nichols failed to make payments on the loans or damaged the vehicles or did any act consistent with concealment. In fact, the accurate information Mr. Nichols provided on his loan application allowed the lender to easily repossess the second vehicle. This case is plainly distinguishable from Banta for the reasons discussed in the previous section. The government did not show, by a preponderance of the evidence, that Mr. Nichols realistically intended to deprive the lender of the full value of the vehicle, nor was it shown that such a loss was probable. As such, the trial court's finding was clearly

erroneous and we remand with the instructions to recalculate Mr. Nichol's offense level without including the value of the vehicle as an intended loss.

C. Empire Funding Corp. Loan

In October of 1997, Mr. Nichols applied for a $4,200 loan with Empire Funding Corp. to pay for the repair of a sewer line in his new home. In the application, Mr. Nichols used a false social security number and an alternate spelling of his middle name rather than his first name. All other information was correct. He was granted the loan, and had the repairs made. Mr. Nichols made monthly payments on the loan for almost two years, and was current on paying back the loan at the time of sentencing. The government presented no evidence to dispute the fact that Mr. Nichols made every loan payment. The trial court made no specific findings concerning this loan, but determined that Mr. Nichols intended to inflict a loss in the full amount of $4,200. This finding is likewise clearly erroneous, and we remand with the instructions to recalculate Mr. Nichols' offense level without including the value of this $4,200 loan as an intended loss.

D. MasterCard

In February 1997, Mr. Nichols obtained a MasterCard under the name "Allen A. Nichols," using the employer identification number previously obtained. He put up a security deposit of $1,000 to obtain the card. The district court included the high balance on the card, $2,002, as the intended loss, which

was greater than the actual loss at the time the account was closed of $1,441.50. Mr. Nichols claims that, at the time of sentencing, he had been making payments on the card for over two years. The government claims that its evidence shows that he stopped making payments almost two years prior to sentencing, and the lender was required "to resort to self-help recoupment" to repay a portion of the debt. Aplee. Br. at 30. For reasons discussed previously, the district court's failure to consider the $1,000 security deposit given prior to issuance of the card is error; it appears that this is a secured credit card, and that should be considered on remand in determining the loss.

E. Bank of Oklahoma

In November of 1997, Mr. Nichols opened a checking account with Bank of Oklahoma, using a false social security number. He wrote a number of bad payroll checks, causing the bank to lose $2,438.70. Mr. Nichols made full restitution to the bank by March 1998, before he became aware of any criminal charges. The trial court determined that Mr. Nichols intended a loss in the full amount of $2,438.70. Mr. Nichols contends that the trial court erred in making this finding, because he had already made full restitution before even being aware of potential charges. We cannot say that such a finding by the trial court was clearly erroneous. The purpose of the intended loss rules is to measure the magnitude of the crime at the time it was committed. See Janusz, 135 F.3d at

- 12 -

1324. The fact that Mr. Nichols later made restitution, even before learning of criminal charges, does not absolve him. His citations to Janusz and United States v. Gennuso, 967 F.2d 1460, 1462 (10th Cir. 1992) for the proposition that a court must deduct from the loss calculation any value the defendant gave the victim at the time of the fraud is unavailing, because the restitution was made after the fraud, not in connection with it.

F. NationsBank

The trial court found Mr. Nichols responsible for a $4,420.85 loss from bad checks cashed or deposited at NationsBank. Mr. Nichols admits writing bad checks in the amount of $2,530.89, but claims the additional amount should not be attributed to him, because the evidence did not show that he intended the additional loss. We cannot say that the trial court's findings attributing the full amount to Mr. Nichols were clearly erroneous. The record indicates that Mr. Nichols cashed or deposited $4,420.85 in bad checks in an account that he had opened using a false social security number. The reason that the bank only had an actual loss of $2,530.89 is that is was able to recover the difference by removing it from Mr. Nichols' account. Just as Mr. Nichols' voluntary restitution discussed in the previous section did not prevent the court from finding an intended loss in the full amount of the bad checks, the fact that the bank was able to recover some of its loss on the bad checks through a setoff does not render the trial court's

findings clearly erroneous.

G.  Acceptance of Responsibility

The trial court denied Mr. Nichols an adjustment for acceptance of responsibility, finding that his testimony was not credible.  We review a trial court's refusal to grant an adjustment for acceptance of responsibility for clear error.  See United States v. Cruz Camacho, 137 F.3d 1220, 1226 (10th Cir. 1998) (noting that the trial court has "broad discretion" to determine whether to give a reduction under USSG § 3E1.1).  We cannot say that the trial court's judgment on this issue was clearly erroneous.

Conclusion

For the foregoing reasons, we REVERSE with respect to the trial court's findings of intended loss concerning the loan amount secured by the home mortgage, the vehicle loan, the Empire Funding loan and the MasterCard high balance.  We AFFIRM in all other respects.  We REMAND with instructions to recalculate the amount of intended loss in accordance with this opinion.