PUBLISH

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 30 2001**

**PATRICK FISHER**
**Clerk**

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STEVEN A. SCHILD,

Defendant-Appellant.

No. 01-3002

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 00-CR-40021-RDR)**

Submitted on the briefs:

James E. Flory, United States Attorney, and T.G. Luedke, Assistant United States Attorney, Topeka, Kansas, for Plaintiff-Appellee.

David J. Phillips, Federal Public Defender, and Marilyn M. Trubey, Assistant Federal Public Defender, Topeka, Kansas, for Defendant-Appellant.

Before **HENRY** , **PORFILIO** , and **MURPHY** , Circuit Judges.

**PORFILIO** , Circuit Judge.

Defendant-appellant Steven Schild pleaded guilty to one count of bank fraud in violation of 18 U.S.C. § 1344. He appeals his sentence, arguing that his offense level should not have been increased based on loss to the bank. We affirm. [1]

Defendant was a customer of Bennington State Bank in Bennington, Kansas (BSB). During 1994 and early 1995, he borrowed money from BSB to finance his cattle operation. When his line of credit with the bank ran out, defendant sold cattle out of trust and then filed false cattle count reports with the bank to conceal his fraud. In August of 1995, defendant filed for bankruptcy protection.

The base offense level for bank fraud under United States Sentencing Guidelines Manual (USSG) § 2F1.1 is six. Defendant's sentence was enhanced eight levels to reflect an intended loss of more than $200,000 but less than $350,000, and defendant was sentenced to a term of imprisonment of one year and one day. On appeal, defendant contends that the bank he defrauded did not lose any money in the end, and that, therefore, it was error to increase his offense level based on loss to the bank.

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

After hearing testimony from the vice president of BSB that defendant had converted approximately five hundred head of cattle at a fair market value of approximately $270,000, the district court relied on that figure to arrive at an intended loss of between $200,000 and $350,000. "We must accept these factual findings unless clearly erroneous, but we review de novo what may be included in computing loss." *United States v. Haddock*, 12 F.3d 950, 961 (10th Cir. 1993). The government bears the burden of proving loss by a preponderance of the evidence. *United States v. Nichols*, 229 F.3d 975, 979 (10th Cir. 2000). To prove intended loss, the government must show "that the defendant realistically intended a particular loss, or that a loss in that amount was probable." *Id.* (quotation omitted).

Application note 8 to the commentary following § 2F1.1 states that "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." Note 8(b) states:

> In fraudulent loan application cases and contract procurement cases, the loss is the actual loss to the victim (or if the loss has not yet come about, the expected loss). For example, if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan. *However, where the intended loss is greater than the actual loss, the intended loss is to be used.*

USSG § 2F1.1, cmt. 8(b) (emphasis added).  An intended loss amount should be used for sentencing purposes if it can be determined and if it exceeds the actual loss.  *Nichols* , 229 F.3d at 978-79.

The fact of actual loss in this case is problematic and was so for the district court.  In trying to arrive at an amount of actual loss for purposes of a restitution order, the district court addressed defendant's argument that his offense level should reflect no loss to the bank.  In fact, according to the bankruptcy court, it appeared BSB had been paid in full.  Appellant's Br., tab C (Bankruptcy Ct. Mem. Op. and Order at 13-14).

At the sentencing hearing, however, BSB's vice-president testified that BSB did not include the claim for the lost cattle in its proof of claim filed in the bankruptcy proceedings because it had already entered into a separate agreement with defendant for repayment of those amounts.  According to BSB's vice president, apart from the recovery in bankruptcy, the bank was still owed $206,000 as a result of defendant's fraud.  Because the evidence was conflicting, the district court refused to award any restitution due to its inability to determine actual loss.

Seizing on this fact, defendant argues that, because the government could not prove actual loss to BSB, his offense level should not have been increased.  This argument ignores the fact that, when actual loss cannot be determined but

intended loss can be ascertained, the latter is to be used for sentencing purposes. *See, e.g., United States v. Moore*, 55 F.3d 1500, 1503 (10th Cir. 1995) (remanding for evidentiary development of defendant's intent to deprive rental car companies of the full value of fraudulently rented vehicles, where the government presented no evidence of actual loss to owners); *Haddock*, 12 F.3d at 963 ("Intended or probable loss may be used instead of actual loss where there is no actual loss, or where actual loss is less than the loss the defendant intended to inflict." (internal quotation omitted)); *United States v. Smith*, 951 F.2d 1164, 1168 (10th Cir. 1991) (noting that a district court need not find actual loss in order to increase an offense level under § 2F1.1).

In a related argument and relying on the second sentence of the commentary quoted above, defendant essentially argues that the amount of intended loss should be determined by netting out the amounts eventually recovered by the bank against the fair market value of the cattle sold out of trust. Defendant is correct that "[a]ctual loss under § 2F1.1 is the amount of money the victim has actually ended up losing at the time of sentencing, not what it could have lost." *Haddock*, 12 F.3d at 961 (quotation omitted). Defendant's sentence, however, was properly based on intended loss, not on actual loss.

In the intended loss calculation, the amount of money repaid to a fraud victim is not included in the loss amount unless the defendant voluntarily

returned value to the victim as part of the ongoing fraud. *United States v. Janusz*, 135 F.3d 1319, 1324 (10th Cir. 1998). "[T]he purpose of the loss calculation under the Sentencing Guidelines is to measure the magnitude of the crime at the time it was committed. The fact that the victims have been able to recover part of their loss after the discovery of the fraud does not diminish [defendant's] culpability and responsibility for purposes of sentencing." *Id.* Thus, the fact that BSB may have recovered some of the money it lost due to defendant's fraud is not taken into account at sentencing. *See also United States v. Burridge*, 191 F.3d 1297, 1300 (10th Cir. 1999) (holding that district court is not required "as a matter of law, to exclude from the intended loss calculation all funds returned to a fraud victim"); *Nichols*, 229 F.3d at 982 (refusing to credit bad check writer with amounts he had restored to bank or with amounts bank recovered in setoff).

Defendant blends into his setoff argument, the point that, because the loans to purchase the cattle were fully secured, that fact should be taken into account in reducing the amount of loss to BSB. That is true when sentencing is based on actual loss. *See Smith*, 951 F.2d at 1166. This court has also required that the value of security given for a loan be taken into account in determining intended loss. *Nichols*, 229 F.3d at 980 (finding it "error to ignore the contemporaneous exchange of security for the note in considering the economic reality of the

transaction and any intended loss in excess of actual loss. The security of the loan is a valid consideration in evaluating a defendant's realistic intent and the probability of inflicting the loss."). Defendant's situation, however, differs from that of the defendants in *Smith* and *Nichols*.

The record indicates that defendant's numerous loans with BSB were cross-collateralized. However, it is undisputed that by April 1995, the value of defendant's collateral equaled the amount of his debt to the bank. When defendant began converting the cattle, there was apparently no extra collateral available to secure the bank in the absence of the cattle themselves. The point defendant ignores is that the loan to him for his cattle operation was a line of credit, part of the security for which was the cattle themselves. When defendant sold the cattle, he sold the bank's collateral. *See Nichols*, 229 F.3d at 979 ("[T]he mere presence of collateral securing an item that was fraudulently obtained does not automatically reduce the loss calculation under § 2F1.1 where it can be shown that the defendant intended to permanently deprive the creditor of the collateral through concealment.").

Intent is a question of fact for the sentencing court to be determined on a case-by-case basis. *Burridge*, 191 F.3d at 1300, 1304. At the sentencing hearing, defendant testified that he did not intend to cause loss to BSB. While the district court might have believed this assertion, it was not clearly

-7-

erroneous for the court to discount it based on defendant's concealment of the fraud. *See id.* at 1303.

This case is controlled by *United States v. Banta*, 127 F.3d 982 (10th Cir. 1997), which involved the purchase of two vehicles by the defendant based on a fraudulent loan application. The fair market value of the vehicles involved in the defendant's fraud was approximately $50,000. After the bank repossessed the vehicles and sold them, the net loss to the bank was approximately $18,000. This court rejected the defendant's argument that $18,000 more closely represented economic reality, or that the defendant could not have intended to inflict a loss equal to the full amount of the loans because the loans were collateralized by the vehicles themselves. The court noted the false information the defendant provided to the bank and the fact that the defendant could have inflicted a loss equal to the face value of the loans if he intended to permanently deprive the bank of its collateral by simply concealing the vehicles. The defendant was thus properly held accountable for the full value of the loans.

Based on *Banta*, it is clear that this defendant was properly sentenced. BSB loaned defendant money to purchase cattle, with the cattle themselves as collateral. Defendant filed false cattle count reports on more than one occasion in an effort to mislead the bank about the number of cattle remaining in his operation. Contrary to the facts in *Banta*, BSB has never recovered any of the

cattle converted by defendant and has never learned exactly what happened to them. The speculation of the court in *Banta* that the defendant there could have concealed the vehicles from the bank is a reality in this case: defendant actually did permanently conceal and/or deprive BSB of its collateral. This case is unlike *Smith*, 951 F.2d 1164, or *Nichols*, 229 F.3d 975, where the defendants fraudulently procured loans, albeit with some type of collateral given. Here, defendant simply sold the bank's collateral. Because the factual findings of the district court are not clearly erroneous and because there is no error in the amounts included in the computation of the loss, defendant was properly sentenced.

The judgment of the United States District Court for the District of Kansas is AFFIRMED.