

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-29-2003

# USA v. McKelvey

Precedential or Non-Precedential: Non-Precedential

Docket 02-2295

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. McKelvey" (2003). *2003 Decisions.* Paper 845.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/845

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2295

_____

UNITED STATES OF AMERICA

v.

RUSSELL A. MCKELVEY,
                                                      Appellant

_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(Crim. No.  01-522)
District Judge: Honorable Berle M. Schiller

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 13, 2003

Before: SCIRICA, BARRY and SMITH, Circuit Judges

(Opinion Filed: January 28, 2003)

OPINION OF THE COURT

SMITH, Circuit Judge:

        This appeal challenges the District Court's calculation of loss under Section 2B1.1

of the 2002 United States Sentencing Guidelines Manual ("Guidelines").  We conclude that

the loss amount computed by the District Court was proper as either actual or intended

loss.  We will, therefore, affirm.

## I.    FACTS

Appellant Russell A. McKelvey was injured in an automobile accident when he was a minor.  McKelvey settled a claim for those injuries, pursuant to which he was to receive the following payments: $24,750 in September of 1982, $30,000 on June 25, 1985, $40,000 on June 25, 1992, $50,000 on June 15, 1997, and $64,000 on June 25, 2002.  Instead of waiting to receive his 1997 payment, McKelvey sold that payment to Settlement Capital Corporation ("Settlement") for $36,100 on May 25, 1995.  In September, 1995, McKelvey assigned $30,000 of the same 1997 payment to Scott McKinstry in settlement of a lawsuit that McKinstry had filed against him.  Then on September 16, 1996, unbeknownst to Settlement or McKinstry, McKelvey again sold his 1997 payment to J.G. Wentworth for a total consideration of $41,728.   Wentworth wire transferred his payment to McKelvey on October 8, 1996.  Finally, in 1996, McKelvey sold his 2002 payment to Settlement for $11,000.

When CIGNA, the administrator of McKelvey's annuity, received letters from all three claimants shortly before the due date of the 1997 payment, it filed an action in interpleader.  The result of that civil action was that the court distributed the 1997 and 2002 payments as follows: Settlement received $22,125 from the 1997 payment and $37,760 from the 2002 payment; McKinstry received $12,500 from the 1997 payment and Wentworth received $15,375 from the 1997 payment and $26,230 from the 2002 payment.

Thereafter, McKelvey pled guilty to one count of wire fraud arising out of

Wentworth's October 8, 1996 wire transfer, in violation of 18 U.S.C § 1343. The government asserted that the loss for Guidelines purposes should be $71,728.26, which was derived by adding the $30,000 assigned to McKinstry together with the $41,728 expended by Wentworth for the 1997 annuity. However, the Pre-sentence Investigation Report ("PSI") calculated the loss at $57,828. That sum resulted from adding the amounts paid by Settlement and Wentworth for the 1997 annuity together with the amount assigned to McKinstry for a total of $107,828, and then crediting the $50,000 annuity payment from 1997 as collateral against the total amount. At sentencing on April 30, 2002, the District Court adopted the PSI finding as to the loss, and calculated the offense level as 10 (12 minus 2 for acceptance of responsibility) and the criminal history category as II. The resulting Guidelines range was eight to fourteen months. The Court then sentenced appellant to fourteen months incarceration.

## II. JURISDICTION

The District Court had jurisdiction over the criminal prosecution and sentencing of McKelvey under 18 U.S.C. § 3231. We have jurisdiction over the appeal from the final judgment under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## III. STANDARD OF REVIEW

Errors of law in applying the sentencing guidelines, such as what constitutes loss, are subject to plenary review. *See, e.g., United States v. Napier*, 273 F.3d 276, 278 (3d Cir. 2001), *cert. denied*, 122 S.Ct. 1937 (2002). Factual findings, such as the amount of the loss, are reviewed for clear error. *See id.*

## IV.  LEGAL ANALYSIS

Note 2(E)(ii) to Section 2B1.1 of the Guidelines states:

In a case involving collateral pledged or otherwise provided by the defendant, [loss shall be reduced by] the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing.

Appellant argues that the District Court erroneously failed to consider $53,000[1] of the 2002 annuity payment as collateral "otherwise provided by defendant" which was divided among the victims in the civil action.  Subtracting $53,000 from the $57,828 loss figure used by the District Court would result in a total loss of $4,828.  If this were the correct loss for Guidelines purposes, it would result in a base offense level of six.  Affording defendant the two-level reduction for acceptance of responsibility would yield a Guidelines range of probation to six months incarceration.

Under § 2B1.1, Note 2(A) of the Guidelines, the loss is the greater of the actual loss or intended loss.  The appellant suggests that both the actual and intended loss should be reduced by the $53,000 remaining from his 2002 annuity payment.

One way that appellant might be entitled to a credit for the 2002 annuity payment is if actual loss were calculated at the time of sentencing, after the 2002 payment was distributed in the interpleader action.  Depending on the nature of the underlying crime, we

---

[1] This number represents the $64,000 annuity payment minus the $11,000 paid by Settlement for the rights to that payment.

4

have calculated actual loss either as it existed at the time the crime was detected, or as it existed at the time of sentencing. *Compare United States v. Shaffer*, 35 F.3d 110 (3d Cir. 1994) (in check kiting scheme where no loss was intended, actual loss should be calculated at time crime was detected), *with United States v. Kopp,* 951 F.2d 521, 536 (3d Cir. 1991) (where defendant procures a secured bank loan through fraudulent misrepresentation, actual loss is estimated at time of sentencing and incorporates current value of collateral). Appellant's argument presumes that his situation is more akin to *Kopp*. However, unlike *Kopp*, where an estimate of actual loss at the time of detection would have been unfair because it would undervalue the security pledged for the loan, the 2002 annuity was divided up as restitution and was not security for the underlying transactions. Incorporating the restitution amount would improperly minimize the appellant's culpability. As this Court has recognized, a "defendant in a fraud case should not be able to reduce the amount of loss for sentencing purposes by offering to make restitution after being caught." *United States v. Mummert*, 34 F.3d 201, 204 (3d Cir. 1994) (where defendant falsified and forged bank loan application, actual loss is the loss to the bank minus current value of pledged collateral and a gratuitous offer to transfer property cannot be considered); *see also Shaffer*, 35 F.3d at 115 (calculating actual loss at the time of detection because reducing the defendant's sentence based on "a last minute payment of restitution would unfairly discriminate in favor of those with greater financial resources"). Therefore, the actual loss should be calculated at the time the crime was detected and the 2002 annuity payment divided up in the civil suit should not be considered "collateral otherwise provided" by the appellant.

5

Moreover, even if appellant were correct that the actual loss should be reduced by the $53,000 divided up in the civil action, such a reduction would not be applicable in determining the intended loss – which would remain at $57,828. *Cf. United States v. Geevers*, 226 F.3d 186, 193 (3d Cir. 2000) (in check kiting scheme, government can make prima facie case that intended loss is full value of checks, and defendant has burden to introduce evidence to the contrary); *see also United States v. McCormac*, 309 F.3d 623, 628-29 (9th Cir. 2002) (reading note 2E(ii) to Guideline § 2B1.1 as only applicable to calculation of actual loss unless defendant anticipated collateral would be seized and holding that where defendant obtained fraudulent loan that she did not intend to repay, loss is based on gross amount of loan regardless of whether victim was able to recoup part of the loss by selling collateral pledged to secure loan); *United States v. Nichols,* 229 F.3d 975, 979 (10th Cir. 2000) ("It is not error for a district court to count the full amount taken through fraud as an intended loss, where the victim recovers the loss through a civil suit, as opposed to through any voluntary action on the part of the defendant"); *United States v. Parsons*, 141 F.3d 386, 392-93 (1st Cir. 1998) (settlement in civil suit does not affect loss calculation). Therefore, because the appellant did not introduce any evidence suggesting that he did not intend to cause the loss of $57,828, and this would be the larger of the actual and intended loss amounts even if actual loss incorporated the $53,000 payment, the District Court did not commit clear error in setting the loss at $57,828.

## V.    CONCLUSION

Appellant's sentence will be affirmed.

6

/s/ D. Brooks Smith
Circuit Judge