**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RONALD D. FISHER,

Defendant - Appellant.

No. 04-4065
(D.C. Nos. 2:00-CV-912-S and
2:96-CR-103-S)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR, KELLY,** and **MURPHY** Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Ronald Fisher, a federal prisoner appearing pro se, appeals the district

court's denial of his 28 U.S.C. § 2255 motion. We affirm.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Fisher "concocted and executed a scheme to obtain money from various federally insured financial institutions and private lenders by making false representations about his past earning history, the amount of assets he currently held, and his ability to repay loans made to him or his companies." *United States v. Fisher*, No. 99-4001, 1999 WL 622903, at **1 (10th Cir. Aug. 17, 1999). He pled guilty to four counts, including making a false statement to a financial institution in violation of 18 U.S.C. § 1344(1) and wire fraud in violation of 18 U.S.C. § 1343. Fisher was sentenced to 137 months imprisonment based in part on the district court finding that the loss to Fisher's victims totaled between $2.5 and 5 million. *See* U.S. Sentencing Guidelines Manual § 2F1.1(b)(1)(N) (1997) (hereafter USSG). We affirmed. *Fisher*, 1999 WL 622903, at **5.

Fisher claims in his § 2255 motion that his plea was involuntary because his trial and appellate counsels were constitutionally ineffective. The district court denied his motion. We granted COA with respect to counsels' investigation of the facts relating to the losses suffered by two financial institutions, Provo Finance, LLC (Provo), and Universal Campus Credit Union (UCCU).

To determine the loss amount used to calculate a sentence for a fraud offense, courts use either the actual loss or the intended loss, whichever is greater. USSG § 2F1.1, cmt. n. 7(b). Courts should, however, consider "the *contemporaneous* exchange of security . . . in considering the economic reality of

the transaction and any intended loss in excess of the actual loss." *United States. v. Nichols*, 229 F.3d 975, 980 (10th Cir. 2000) (emphasis added); *see also* USSG. § 2F1.1, cmt. n. 7(b) (stating that amount of loss should be reduced by "any assets *pledged* to secure the loan." (emphasis added)).

Fisher claims the losses incurred by Provo and UCCU were "backed by collateral," Aplt. Br. at 10, and that the loss amounts determined at sentencing should have been offset by the amounts recovered through the sale of this collateral. He contends that his trial and appellate attorneys were constitutionally ineffective for not investigating and informing the trial court of the true nature of these losses, and that the total loss to his victims would be less than $2.5 million if both the Provo and UCCU losses were properly determined. We have reviewed "the district court's legal rulings de novo and its findings of fact for clear error," *United States v. Cockerham*, 237 F.3d 1179, 1181 (10th Cir. 2001), and conclude there is no factual or legal basis for Fisher's claims.

***The UCCU Fraud.*** Fisher deposited $1,657,722.85 in worthless checks into his UCCU account to induce UCCU to issue him cashier's checks totaling at least $1,500,435.80. Fisher used the cashier's checks to pay off loans at other institutions, some of which were backed by collateral pledged as security. *After* UCCU discovered Fisher's fraud, it obtained assignments of this collateral from the other lenders and recouped some losses by selling these assets. Fisher's own

-3-

expert admitted at the sentencing hearing that there was never any loan, pledge or security agreement between Fisher and UCCU, and that all of these collateral assignments and recoveries occurred after Fisher had already defrauded UCCU and only because of UCCU's post-fraud litigation and other efforts. *See* Aplt. App. at 256-60; *see also Fisher*, 1999 WL 622903, at **3 n.5 & n.6.

Fisher argued at sentencing and on direct appeal that the loss to UCCU should be offset by these asset sales, but both the trial court and this court rejected this argument because it ignores the clear requirement to use the higher, intended loss of $1,657,722.85, rather than any lower actual loss. *Fisher*, 1999 WL 622903, at **3 (explaining that even if UCCU's actual losses were zero, the intended loss amount of $1,657,722.85 governs).

Fisher now argues that the UCCU "loan" was "backed by various pieces of collateral," Aplt. Br. at 14. Citing *Nichols*, 229 F.3d at 980, he claims UCCU's loss should be offset by this "liquidated collateral." Aplt. App. at 13. His evidence, however, is nothing more than the same asset sales that UCCU recouped through the post-fraud collateral assignments. *Compare id.* at 200-01, *with id.* at 243-44. Fisher presents no evidence that this collateral was contemporaneously pledged to secure his indebtedness at the time UCCU issued the cashier's checks. *See* USSG 2F1.1, cmt. n. 7(b). Indeed, his § 2255 evidence simply confirms that all of these collateral assignments and sales occurred after

UCCU discovered the fraud.  Moreover, both his trial and appellate counsel *did* argue that these asset sales should be used to offset the loss, and we rejected this argument. *Fisher*, 1999 WL 622903, at **3, n.6.  We also rejected his renewed argument that UCCU's loss should be its actual loss.  *Id*. at **3.  "The fact that a victim has recovered part of its loss after discovery of a fraud does not diminish a defendant's culpability for purposes of sentencing." *Nichols,* 229 F.3d at 979.  In short, Fisher has presented no new evidence, and his attorneys have already asserted this same, flawed legal argument.

***Provo***.  Fisher obtained a loan from Provo based on his false representation that he had paid off the outstanding lien on the property he pledged to Provo as security.  The presentence report noted that Provo was in litigation at the time of sentencing seeking to obtain rights in the fraudulently-pledged collateral.  Fisher presents evidence that Provo later succeeded in its litigation and recovered proceeds from the sale of the pledged assets.  He argues his attorneys were ineffective for not seeking to offset Provo's losses by these amounts.  There is no merit to Fisher's claim that this impaired collateral should have been deducted from the amount of loss.  Where as here, a defendant provides false information to a lender about the value of its pledged collateral, the defendant is properly held liable for the higher intended loss. *United States v. Schild*, 269 F.3d 1198, 1202 (10th Cir. 2001) (citing *United States v. Banta*, 127 F.3d 982 (10th Cir. 1997)).

"[T]he mere presence of collateral securing an item that was fraudulently obtained does not automatically reduce the loss calculation under § 2F1.1 where it can be shown that the defendant intended to permanently deprive the creditor of the collateral through concealment." *Nichols*, 229 F.3d at 979. Provo was forced to recover its impaired collateral through expensive litigation and had not recovered any of it at the time of sentencing. Fisher's trial and appellate attorneys were not ineffective for failing to assert the meritless argument that Provo's losses should have been offset by this fraudulently-pledged collateral.

Because Fisher did not present any evidence that any collateral was validly pledged to secure the indebtedness to Provo or UCCU, the district court did not err in denying his § 2255 motion without an evidentiary hearing, and Fisher cannot show that his counsels' conduct was objectively unreasonable or that he suffered the prejudice required to establish an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668, 687-89 (1984).

The judgment of the district court is AFFIRMED.

Entered for the Court

Stephanie K. Seymour
Circuit Judge

-6-