Nabih BEDEWI, Petitioner,

v.

UNITED STATES of America, Respondent.

Criminal Action No. 05–101(RWR).

United States District Court, District of Columbia.

Oct. 16, 2008.

John D. Griffith, U.S. Attorney's Office, Washington, DC, for Respondent.

Robert P. Trout, Amy B. Jackson, Trout Cacheris, PLLC, Washington, DC, for Petitioner.

### MEMORANDUM OPINION

RICHARD W. ROBERTS, District Judge.

*Pro se* petitioner Nabih Bedewi has moved under 28 U.S.C. § 2255 to vacate his sentence, arguing that his restitution order should be reduced because of subsequent recoveries by the victim, that the sentence exceeds the applicable range under the Sentencing Guidelines, and that he is entitled to leniency because of family hardship and because of the shorter guidelines sentencing range that was previously applicable to his offense. The government opposes Bedewi's motion, insisting that his claims are procedurally barred, baseless, and beyond the scope of § 2255. Bedewi's § 2255 motion will be denied because Bedewi fails to show good cause for not raising his challenges by direct appeal, most courts bar using a § 2255 motion to challenge a restitution order, he agreed in his binding plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) to the sentencing range applied, and his plea for leniency is not a ground for relief under § 2255. Bedewi has also moved for leave to conduct discovery related to his various challenges to his sentence under Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts. This motion will be denied for lack of good cause shown.

### BACKGROUND

In 2005, Bedewi pled guilty to a one-count information charging him with theft concerning programs receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(A). Bedewi agreed under oath to the following facts. Bedewi was a Professor at George Washington University's ("GWU's") School of Engineering and Applied Science and the Director of GWU's National Crash Analysis Center ("NCAC"), a research and resource center for transportation safety studies on vehicles and highways. NCAC received approximately 80 percent of its funding from the U.S. Department of Transportation ("DOT") through reimbursements of incurred expenses. Bedewi also acted as the principal investigator on NCAC's cooperative agreements with DOT and was responsible for requesting and approving research, work orders, and equipment purchases. Although Bedewi was prohibited from owning and controlling NCAC subcontractors and vendors and from expending NCAC funds to such entities, he actually owned and controlled International Transportation Safety Corporation ("ITSC") and EBI, Inc. and had an ownership interest in New Generation Motors Corporation ("NGM")—all subcontractors or vendors of the NCAC. Bedewi caused (1) the NCAC to pay fraudulently inflated invoices from ITSC, EBI, and NGM; (2) two unauthorized graduate student stipends to be set up for a family member and the spouse of an NGM employee based on false representations that they would be working on NCAC projects; and (3) an unauthorized and fraudulent tuition

scholarship to be set up for the spouse of a GWU employee and NGM consultant.

Bedewi stipulated that the losses from his criminal activity totaled $991,909.31, including $797,784 that DOT paid in reimbursements to NCAC, and $194,125.31 paid by NCAC. He entered into the plea agreement under Rule 11(c)(1)(C), agreeing to a Sentencing Guidelines calculation [1] that resulted in a sentencing range of 37 to 46 months in prison. (*See* Plea Agreement ¶¶ 2–3.) On June 29, 2005, Bedewi was sentenced to serve 38 months in prison and three years on supervised release, perform 50 hours of community service, and pay restitution in the amount of $872,220.99 and a $100 special assessment.

Bedewi did not seek direct appellate review of either his guilty plea or his sentence. Instead, he filed the instant *pro se* § 2255 motion [2] on October 31, 2005, which the government opposes. He then filed a motion for leave to conduct discovery under Rule 6 of the Rules Governing Section 2255 Proceedings.

## DISCUSSION

■ Section 2255 authorizes "[a] prisoner in custody ... claiming the right to be released" to move the sentencing court to "vacate, set aside or correct" a defendant's sentence if the sentence was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255. "[T]he petitioner seeking to vacate his sentence shoulders the burden of sustaining his contentions by a preponderance of the evidence." *Winchester v. United States*, 477 F.Supp.2d 81, 83 (D.D.C.2007) (citing *United States v. Simpson*, 475 F.2d 934, 935 (D.C.Cir. 1973)). Specifically, he "must show 'a fundamental defect, which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" *United States v. Weaver*, 112 F.Supp.2d 1, 6 (D.D.C.2000) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)).

■ "Because of the premium placed on the finality of judgments, there are limited circumstances under which a court should grant a Section 2255 motion. Collateral attack is not appropriate where a prisoner had the opportunity to raise his objections to his conviction and sentence ... on direct appeal and failed to do so." *United States v. Wilson*, Criminal Action No. 96–319–01(CKK), 2005 U.S. Dist. LEXIS 20113, at *9–10 (D.D.C. Sept. 12, 2005) (citing *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). Accordingly, "[w]hen a petitioner fails to raise an argument on direct appeal, he may raise his claim collaterally (that is, pursuant to § 2255) only if he can show cause and prejudice." *Winchester*, 477 F.Supp.2d at 84 (citing *Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003)). "To show cause and prejudice for the procedural default, the petitioner must (1) demonstrate

---

1. The parties agreed to a total offense level of 24, derived from a base offense level of 6, a 14–point enhancement under § 2B1.1(b)(1) for a loss of more than $400,000; a 2–point enhancement under § 3B1.1(c) for Bedewi's role as organizer and leader; and a 2–point enhancement under § 3B1.3 for abusing a position of trust. (*See* Plea Agreement ¶ 3.)

2. Bedewi originally filed his motion as a "Part 18 Rule 35 Motion for Correction or Reduction of Sentence[,]" but he later requested and was granted permission to have the motion recharacterized as a § 2255 motion. (*See* February 1, 2008 Order.)

good cause for his failure to raise the issue on appeal,[3] and (2) show that the issue he is raising caused actual prejudice." *Winchester,* 477 F.Supp.2d at 84 (citing *Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *United States v. Kleinbart,* 27 F.3d 586, 590 (D.C.Cir.1994)).

## I. RESTITUTION

■ Bedewi claims that the restitution portion of his sentence should be reduced because of the government's alleged breach of the plea agreement. (*See* Petr.'s Mot. for Correction or Reduction of Sentence ("Petr.'s Mot.") at 2 ("While the Plea Agreement explicitly implied that . . . the restitution would be paid to DOT and the balance to GWU, the prosecutor requested from the sentencing court to make the entire amount payable to GWU. Given that this was not agreed upon in the plea agreement, it is the petitioner's opinion that this is in violation of the plea agreement.").) This claim could have been raised on direct appeal, and Bedewi wholly fails to show cause—let alone good cause—for his failure to raise this issue on appeal. As a result, this claim is procedurally barred.

■ In his reply brief, Bedewi appears to concede that his claim regarding the restitution is procedurally barred, and instead argues that his restitution amount should be reduced because after he was sentenced, GWU received more funds from third parties (who had received a portion of the criminal proceeds) than were originally accounted for at the sentencing hearing. Bedewi insists that his "knowledge of this information came months after the sentencing hearing and therefore well out-side the allowable period for appeal[.]" (Petr.'s Reply ¶ 4.) The timing of Bedewi becoming aware of this information is of little import, however. The text of § 2255 in the main provides a method for prisoners to challenge collaterally the legality of their custody and to seek release, not to challenge the restitution order. Indeed, although the D.C. Circuit does not appear to have addressed the issue, "[n]early every circuit to consider the issue has concluded that an order of restitution may be not attacked in a § 2255 petition[.]" *Kaminski v. United States,* 339 F.3d 84, 88 (2d Cir.2003); *see also United States v. Bernard,* 351 F.3d 360, 361 (8th Cir.2003) (collecting cases) (holding that "a federal prisoner cannot challenge the restitution portion of his sentence using 28 U.S.C. § 2255"); *Townsend v. United States,* Criminal Action No. 88–254–03(TFH), 2000 U.S. Dist. LEXIS 12705, at *14 (D.D.C. Aug. 28, 2000) (collecting cases). Even if a challenge to a restitution order were appropriate under § 2255, Bedewi has shown neither a fundamental defect in the imposition of the order nor good cause for his failure to challenge the order by direct appeal.

## II. GUIDELINES CALCULATION

■ Bedewi claims that his sentence was imposed using a guidelines range inapplicable to his conviction. (*See* Petr.'s Mot. at 2–3). Specifically, he contends that the loss calculation utilized in the plea agreement and ultimately adopted at sentencing was the gain to himself, which U.S.S.G. § 2B1.1 directs is to be used only if the victim's loss cannot be accurately determined. *See* U.S.S.G. § 2B1.1 (b)(1), cmt. n. 3(B) (2004) ("The court shall use

---

**3.** The "cause and prejudice" standard applies whether a defendant has failed to raise a particular claim on appeal or has failed to appeal at all. *See, e.g., Winchester,* 477 F.Supp.2d at 84 (applying the standard to a petitioner's § 2255 motion where petitioner did not previously appeal his sentence).

the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined.").

 This claim fails for several reasons. Bedewi could have raised the claim on direct appeal, and he again does not show any cause for his failure to do so. As a result, the claim is procedurally barred. Bedewi's claim also fails on the merits because he agreed in the binding plea agreement which he signed and reaffirmed during his plea colloquy "that a sentencing range of 37 to 46 months . . . is the appropriate sentence for the offense to which [he] is pleading guilty." (Plea Agreement SI 4.) Even if a different loss calculation was warranted and would have yielded a different sentencing range, the law in this circuit is that Rule 11(c)(1)(C) "countenances agreed-upon sentences falling outside of the otherwise applicable Guidelines range [,]" *United States v. Goodall,* 236 F.3d 700, 705 (D.C.Cir.2001), and "[o]nce parties reach a binding plea agreement specifying that a specific sentencing range is the appropriate disposition of the case, the court is bound by the plea agreement after it accepts it." *Winchester,* 477 F.Supp.2d at 85 (citing Fed.R.Crim.P. 11(c)(1)(C) and *United States v. Heard,* 359 F.3d 544, 548 (D.C.Cir.2004)); *see also Nelson v. United States,* 406 F.Supp.2d 73, 76 n. 1 (D.D.C.2005). Moreover, where, as here, a petitioner agrees in a plea agreement to a particular sentence, he fails to demonstrate the requisite prejudice if he received a sentence consistent with the terms of the plea agreement. *See Winchester,* 477 F.Supp.2d at 86 ("As the petitioner here agreed that 144 months was an appropriate sentence, he fails to demonstrate prejudice."); *Molina v. United States,* Civil No. 04–1828, 2006 WL 1997384, at *3 (D.P.R. July 14, 2006) (finding that "petitioner has failed to demonstrate a specific showing of prejudice" where he was sentenced consistent with the terms of a plea agreement).[4]

 Bedewi appears to concede these points in his reply brief, and instead argues that his term of incarceration should be reduced because GWU received more funds—after Bedewi was sentenced—from third parties than were originally accounted for at the sentencing hearing. He insists that he learned this information months after the sentencing hearing, and that if the adjusted loss to GWU were taken into account, his sentencing range would be 18 to 24 months, rather than 37 to 46 months. (*See* Petr.'s Reply at 2.) Again, Bedewi's argument is unavailing because whether GWU was compensated by third parties after sentencing does not render the sentence itself illegal. *See, e.g., United States v. Fisher,* 150 Fed.Appx. 860, 862 (10th Cir.2005) (affirming a district court's denial of petitioner's § 2255 motion by explaining that "the fact that a victim has recovered part of its loss after discovery of a fraud does not diminish a defendant's culpability for purposes of sen-

---

4. Bedewi notes that he agreed to the Guidelines range calculation reflected in the plea agreement, in part, because of his reliance on the erroneous advice of his counsel. (*See* Petr.'s Mot. at 2.) While "ineffective assistance of counsel may demonstrate cause and prejudice," *Cassell v. United States,* Criminal Action No. 00–270(RMU), 2006 WL 2051371, at *4 n. 2 (D.D.C. July 19, 2006), Bedewi does not contend that his counsel's alleged ineffective assistance was the cause for his failure to raise his claims regarding the sentencing range calculation on direct appeal. Furthermore, although "the claim of ineffective assistance is not itself forfeited if not raised during appeal[,]" *id.,* Bedewi's allegations do not amount to an ineffective assistance claim because he does not allege that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Streater,* 70 F.3d 1314, 1318 (D.C.Cir.1995).

tencing" (internal quotations and citation omitted)).

## III. REQUEST FOR LENIENCY

■ Bedewi urges that his sentence should be reduced in light of the great hardship that his incarceration and restitution have caused his family, and because of the more lenient guidelines that were previously applicable to his offense. (*See* Petr.'s Mot. at 3.) Under § 2255, however, a court may vacate, set aside, or correct a sentence only "if it determines that the sentence was illegal." *United States v. Hughes*, Criminal Action No. 04–445(CKK), 2006 WL 2092634, at *5 (D.D.C. July 27, 2006) (citing *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979)). In other words, "[a] petitioner can collaterally attack his sentence under section 2255 where the sentencing judge made an 'objectively ascertainable error.'" *Id.* (quoting *Baylor v. United States*, 314 F.Supp.2d 47, 50 (D.D.C.2004)). Bedewi's requests for leniency are in no way challenges to the legality of his sentence, nor do they entail any claim of error. They therefore are not cognizable under § 2255.[5] *See, e.g., United States v. Silva*, 76 F.3d 390, 1996 WL 30270, at *2 (9th Cir.1996) (unpublished table opinion) (stating that "a plea for leniency based on factors other than those contemplated by section 2255 ... is not cognizable under section 2255"); *United States v. Somers*, 552 F.2d 108, 114 (3d Cir.1977) (explaining that a post-sentencing plea for leniency based on family hardship is not a proper grounds for a § 2255 proceeding); *Hughes*, 2006 WL 2092634, at *5 (finding that a petitioner's plea for le-

niency based on family hardship "is outside the scope of Section 2255"); *Williams v. United States*, No. 3:07–1038, 2008 WL 2704423, at *2 (M.D.Tenn. July 3, 2008) (holding that "section 2255 is inapplicable" to a petitioner's plea for leniency based on the "severe [h]ardship, due to the current health crisis in his immediate [f]amily"); *Hamilton v. United States*, No. 06–CR–179, 2008 WL 189933, at *3 (N.D.N.Y. Jan. 18, 2008) (same).

## IV. RULE 6 MOTION FOR DISCOVERY

■ Finally, Bedewi has also moved under Rule 6 of the Rules Governing Section 2255 Proceedings for leave to seek discovery from the government to support his § 2255 motion.[6] Rule 6(a) instructs that a district court may authorize a party to conduct discovery upon a showing of "good cause," and good cause exists "'where specific allegations before the court show reason to believe that the petitioner may, if facts are fully developed, be able to demonstrate that he is ... entitled to relief[.]'" *Bracy v. Gramley*, 520 U.S. 899, 908–09, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969)). None of the reasons provided by Bedewi in his Rule 6 motion constitutes such good cause.

Bedewi insists that discovery is necessary to obtain information regarding the "true loss" to GWU. Again, Bedewi appears to rely on what GWU later received from "other parties which counts against the defendant's restitution[,]" and the fact that "[t]he 'loss calculation' derived by the

---

5. Moreover, Bedewi's family circumstances were among the factors considered at sentencing.

6. He also originally asked to seek similar discovery from GWU, but later withdrew that

request in his reply brief in support of his § 2255 motion. (*See* Petr.'s Reply ¶ 6 ("Petitioner ... requests that the discovery be served upon the Government only.").)

Government was based on the gain to the defendant" as the primary bases for his request. (*See* Petr.'s Mot. for Leave to Conduct Discovery ("Petr.'s Discovery Mot."), Ex. B (First Request for Admissions) ¶¶ 9–10.) As is discussed above, neither subsequent payments to GWU by third parties nor the loss calculation utilized constitutes grounds for granting petitioner's § 2255 motion. Thus, discovery on these issues is unnecessary and they do not provide good cause.

Bedewi's discovery motion includes allegations that there were "widespread accounting improprieties in the university's research grants and contracts, some of which are illegal and fraudulent, and which would have resulted in a university[-]wide federal investigation." (Petr.'s Discovery Mot. at 5.) Even if these allegations were true, Bedewi fails to explain how such improprieties would alter his own culpability, and this failure renders discovery on such allegations similarly unnecessary and unwarranted.

Bedewi insists that discovery would reveal that GWU knew of his "activities" with NGM and ITSC, and therefore he could not have been acting in a " 'position of trust' as defined in the sentencing guidelines." (*Id.*) Even assuming that GWU did know of some of his activities with these companies, Bedewi fails to explain how such knowledge would negate his status as one in a position of trust as defined by § 3B1.3 of the Sentencing Guidelines.[7] He therefore fails to provide good cause for his discovery request on the issue.

Finally, Bedewi seeks discovery to show that "he was not the Director [of NCAC]" during the entirety of the government's investigation of his criminal activity. (*Id.*) Bedewi again fails to provide good cause for his request, since even if there was a period in which he was not the Director, he does not deny that he held the position of Principal Investigator during the relevant timeframe or deny engaging in the offense. Bedewi gives simply no explanation for how such discovery could alter the outcome of his § 2255 proceedings. Accordingly, Bedewi's Rule 6 motion will be denied for lack of good cause shown.

## CONCLUSION

GWU's receipt of compensation after Bedewi's sentencing does not undermine the legality of the restitution order. Because (1) Bedewi fails to show good cause for not raising his challenges to the restitution order and guidelines calculations by pursuing a direct appeal, (2) a § 2255 motion here is inappropriate to challenge his restitution order, (3) he agreed to the sentencing guidelines calculations in his binding Rule 11(c)(1)(C) plea agreement, and (4) his plea for leniency is not a ground for relief under § 2255, Bedewi's § 2255 motion will be denied. Bedewi's discovery motion will be denied for failure to show good cause for the discovery requested.

An appropriate Order accompanies this Memorandum Opinion.

---

7. "[T]rust refers to a position of ... trust characterized by professional or managerial discretion (*i.e.,* substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in na-

ture.... [T]he position of ... trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult)." U.S.S.G. § 3B1.3 application n. 1.