**F I L E D**

**UNITED STATES COURT OF APPEALS**

**OCT 14 1998**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SHARON LEIGH BECK,
aka Sharon Munoz,

Defendant-Appellant.

No. 97-5151, 98-5035
(D.C. No. 96-CR-161-1-BU)
(NOK)

# ORDER AND JUDGMENT*

Before **SEYMOUR**, Chief Judge, **BRORBY** and **BRISCOE**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, or collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Sharon Leigh Beck was named in a multi-count indictment charging her with conspiracy to commit bank fraud and to utter counterfeit checks in violation of 18 U.S.C. § 371, and multiple substantive counts of bank fraud and uttering counterfeit checks. She pled guilty to the conspiracy count pursuant to a plea agreement and was sentenced to twenty-one months in prison and three years of supervised release, and was ordered to pay restitution. On appeal, Ms. Beck challenges her sentence in three respects, asserting that the district court erred in determining the amount of loss attributable to her under USSG § 2F1.1, erred in imposing an upward adjustment for her role in the offense as a manager or supervisor under USSG 3B1.1(b), and erred in denying her a downward adjustment for acceptance of responsibility under USSG 3E1.1. We affirm.

Ms. Beck's conviction is based on her activities as part of a counterfeit check cashing scheme originated by the so-called Vietnamese Mafia in California. Participants traveled to Oklahoma and other states, obtained identification, and cashed counterfeit payroll checks at federally insured banks where the victim companies carried out their financial transactions. The conspiracy count charged that Ms. Beck, along with co-defendants Michael Galle and Freddie Feagans and other unnamed co-conspirators, cashed numerous counterfeit checks in Tulsa, Oklahoma, as overt acts in furtherance of the conspiracy. In the plea agreement, the parties stipulated that the loss for purposes of section 2F1.1 was more than

$10,000 and less than $70,000. The agreement separated the counterfeit checks pertaining to the calculation of loss into those checks that Ms. Beck had personally presented for payment and those presented for payment by her co-conspirators in Tulsa. Ms. Beck agreed that the loss calculation should include those checks for which she was personally responsible and the government contended that the checks passed by her co-conspirators should be included as well.

After hearing testimony at sentencing, the district court determined that the amount of loss should include the checks passed by Ms. Beck's co-conspirators in Tulsa because she had recruited and controlled them and was therefore accountable for their activity. Based on the same findings, the court ruled that Ms. Beck was a manager or supervisor and imposed a three-level upward adjustment under section 3B1.1(b). The court refused Ms. Beck's request for a reduction for acceptance of responsibility, finding that although Ms. Beck had at her plea proceeding accepted responsibility, she had since reversed her position and denied her involvement in directing the activity of her co-defendants.

We turn first to Ms. Beck's contention that the district court erred in attributing to her the checks passed by her co-conspirators in Tulsa when calculating the amount of loss. The offense level for conspiracies involving fraud and counterfeit instruments is set by section 2F1.1, which requires an increase of

five levels if the amount is more than $40,000 and less than $70,000. Under section 1B1.1(a)(1), a court is to determine the base offense level on the basis of those acts which the defendant commits, aids, abets, counsels, commands, induces, procures, or willfully causes, or in the case of a conspiracy, those acts by others in furtherance of the conspiracy that are reasonably foreseeable to the defendant. "The government has the burden of proving by a preponderance of the evidence that a particular sentence enhancement is warranted." *United States v. Moore*, 55 F.3d 1500, 1501 (10th Cir. 1995).

The court here found that Ms. Beck had recruited and managed the Tulsa co-conspirators and was therefore accountable for their activity. "Factual findings supporting a district court's calculation of loss under USSG § 2F1.1 are reviewed for clear error." *United States v. Knox*, 124 F.3d 1360, 1365 (10th Cir. 1997). The government presented evidence at the sentencing hearing from Ms. Beck's co-conspirators that Ms. Beck recruited them, instructed them on passing the counterfeit checks, arranged transportation, received a commission on the checks they cashed, and acted as an intermediary between them and the organizers of the conspiracy. This evidence is clearly sufficient to support the court's decision to attribute to Ms. Beck the checks passed by her co-conspirators.

Ms. Beck also challenges the court's decision to enhance her sentence for her role in the offense as a manager or supervisor under section 3B1.1. We

review the determination that a defendant's sentence should be increased for her role in the offense for clear error. *United States v. Cruz Camacho*, 137 F.3d 1220, 1223-24 (10th Cir. 1998). The court here applied section 3B1.1(b) and imposed a three-level increase upon determining that Ms. Beck was a manager or supervisor of criminal activity involving five or more participants. Ms. Beck does not argue that the conspiracy involved less than five people, contending only that she did not supervise or manage her co-conspirators. The lower court rejected this argument, stating that "at least according to Mr. Feagans, and I believe what he was saying, [Ms. Beck] did recruit and manage and supervise the criminal activity in this case through furnishing checks, through furnishing airline tickets, and [Ms. Beck was] receiving commissions off of the checks." Rec., vol. III, at 51. These findings are supported by the record and are clearly sufficient to support the court's application of section 3B1.1. *See* USSG § 3B1.1, cmt., note 4 (factors court is to consider include recruitment of accomplices, claimed right to larger share of fruits of crime, degree of planning or organizing, and degree of control and authority exercised over others).

Finally, we find no merit to Ms. Beck's argument that the court erred in denying her a downward adjustment for acceptance of responsibility. We review this determination for clear error, and the defendant must prove entitlement to the reduction by a preponderance of the evidence. *United States v. McMahon*, 91

F.3d 1394, 1396-97 (10th Cir. 1996). The court here rejected Ms. Beck's request, stating that "if not denying all responsibility, [she was] denying that [she] had anything to do with these other co-defendants in directing the conspiracy at mid-level." Rec., vol. III, at 52. "[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." *United States v. Contreras*, 59 F.3d 1038, 1041 (10th Cir. 1995) (quoting USSG 3E1.1, cmt., note 1(a). Accordingly, we reject Ms. Beck's argument that the court erred in denying her an adjustment for acceptance of responsibility.

The sentence is **AFFIRMED**.

ENTERED FOR THE COURT

Stephanie K. Seymour
Chief Judge