**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 15 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MICHELE RENEE BERRY,

Defendant-Appellant.

No. 02-6372
(Western District of Oklahoma)
(D.C. No. 02-CR-27-R)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this court has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I.     Introduction

After a jury trial, appellant Michelle Renee Berry was found guilty of six counts of wire fraud, in violation of 18 U.S.C. §§ 2(b) and 1343. A Presentence Investigation Report ("PSR") was prepared and Berry filed written objections. The district court considered Berry's objections, sustaining one but overruling the others. The court sentenced Berry to twenty-four months' incarceration on each count to be served concurrently. The court also ordered Berry to pay restitution in the total amount of $188,225.15. In this appeal, Berry does not challenge her convictions but appeals the sentence imposed by the district court. Exercising jurisdiction pursuant to 18 U.S.C. § 3742(a), this court **affirms**.

## II.    Background

In August 1997, Berry became a sales person for an Oklahoma corporation known as Radios Unlimited, Inc. ("Radios Unlimited"). Radios Unlimited was under contract to sell cellular telephones for Nextel, Inc. ("Nextel"). During the course of her employment with Radios Unlimited, Berry created subscriber agreements using fictitious corporate names and addresses in order to obtain a supply of pre-approved cellular telephones. These records were transmitted to Nextel via interstate communication devices. Nextel thereafter activated the cellular telephones and mailed them to Berry.

At trial, the government presented evidence that Berry established fifteen fraudulent accounts and received approximately 300 cellular telephones. Berry sold the telephones to individuals and directed the purchasers to mail their payments for monthly service directly to her post office box address. Berry deposited the air time payments into her personal bank account; she forwarded only $1500 to Nextel.

Berry was convicted of six counts of wire fraud, in violation of 18 U.S.C. §§ 2(b) and 1343. Applying U.S.S.G. § 2F1.1 (1997), the PSR calculated Berry's base offense level at six and recommended a seven-level increase in the base offense level because the loss resulting from the fraud exceeded $120,000.00. U.S.S.G. § 2F1.1(b)(1)(H) (1997). At sentencing, the district court overruled Berry's objection to the seven-level increase. Berry's total offense level was set at seventeen and her criminal history category at I. She was sentenced to twenty-four months' incarceration on each count, to be served concurrently.

Berry then brought this appeal. She does not challenge her convictions but asserts that the district court erred in overruling her objection to the calculation of the amount of the loss.

**III.** **Discussion**

*A.* *Standard of Review*

This court reviews "the district court's determination of a U.S.S.G. § 2F1.1 loss [] for clear error, but the factors which the district court may consider in determining the loss are reviewed de novo." *United States v. Keifer*, 198 F.3d 798, 800 (10th Cir. 1999). Because Berry objected to the calculation of the loss amount in the PSR, the government was required to prove the facts underlying the calculation by a preponderance of the evidence at the sentencing hearing. *Id*.

*B.* *Amount of Loss*

The 1997 edition of the Guidelines Manual was used to calculate Berry's sentence. Pursuant to § 2F1.1, her offense level was affected by the value of the loss caused by her criminal conduct. Loss was defined as "the value of the money, property, or services unlawfully taken." U.S.S.G. § 2F1.1, cmt. n.7 (1997) (cross-referencing U.S.S.G. § 2B1.1 for a more detailed definition of loss). "Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue." U.S.S.G. § 2B1.1, cmt. n.2 (1997).

At the sentencing hearing, FBI Special Agent Tim Akins testified for the government. Agent Akins stated that he provided Nextel with the fifteen

fraudulent account numbers. [1]  In response, Nextel sent Akins "adjustment sheets" for all fifteen accounts and invoices for some of the accounts.  From this information, Akins was able to determine the amount of bad-debt loss Nextel wrote off for each account and the amount of any payments Nextel received on the accounts after the loss was written off.

Akins summarized the information he received from Nextel on two charts which were introduced at the sentencing hearing.  The first chart listed each account number, account name, number of telephones, amount of the bad debt written off by Nextel, date the debt was written off, and adjustments to the amount written off.  The second chart compared the invoice balances and write-off dates with the adjustment sheet balances and write-off dates.  Akins testified that based on his review of the records provided by Nextel, the actual loss sustained by Nextel as a result of Berry's fraudulent acts was $174,181.42. Akins was the only witness at the sentencing hearing who testified about amount of loss.

Berry raises three challenges to the government's evidence of loss.  She first argues that the information Akins received from Nextel and upon which he

_____

[1]Berry's argument on appeal is confined to the amount of Nextel's loss. She does not argue that the government failed to prove by a preponderance of the evidence the amount of loss suffered by Radios Unlimited or the five individuals identified in the judgment.

based his loss calculation was unreliable for several reasons: (1) it did not include any explanation of how Nextel arrived at its loss; (2) it did not indicate whether billed minutes were included in any promotional price; (3) it did not indicate how many minutes were included in the promotional price; (4) it did not indicate when the promotion offer ended; (5) it was not derived from a full set of invoices; (6) it did not indicate whether Nextel's write-off minimized its losses; (7) it did not indicate whether Nextel was intentionally keeping the fraudulent accounts active in order to increase its losses and the amount it could recover in restitution; (8) it did not indicate how many accounts Nextel received payments on or how much money Nextel received; and (9) it did not indicate who made payments on the accounts. We are not convinced by any of Berry's arguments.

Akins testified that Nextel arrived at its loss by determining the amount it wrote off as an uncollected bad debt for each of the fraudulent accounts. The issues raised by Berry relating to the promotional period for each telephone are irrelevant. Nextel determined the amount of its loss by reference to the amounts billed for service but uncollected. Akins testified that Nextel had purged the complete set of invoices for the fraudulent accounts. Nextel, however, combined the uncollected amounts from those individual invoices into a single amount from which it determined the total bad debt. As to Berry's arguments that Nextel's write-off may have decreased its loss and that Nextel may have intentionally kept

the fraudulent accounts active, Berry has not substantiated these bald allegations. Finally, the government *did* present evidence at the sentencing hearing that payments were received on some of the fraudulent accounts. These payments were deducted from Nextel's loss. The identity of the person making the payment is irrelevant.

This court has previously held that a sentencing court may consider hearsay evidence to determine loss if that evidence bears indicia of reliability. *United States v. Moore*, 55 F.3d 1500, 1501 (10th Cir. 1995). Akins testified that he received information directly from Nextel in response to his inquiry. The district court was entitled to rely on the accounting information supplied to Akins by Nextel particularly when, as in this case, there is simply nothing in the record indicating that this information was fabricated or falsified. The alleged deficiencies asserted by Berry are either wholly unfounded or have no bearing on the reliability of the information provided to Akins by Nextel.

Berry next contends, for some of the same reasons she advances above, that the government did not have adequate information from which it could ascertain a correct loss amount. Its calculation and the district court's finding, she therefore contends, are erroneous. Specifically, she reasserts her arguments that Akins did not know whether payments were being made on specific accounts, the specific terms of any promotional period, how many minutes were

used by each telephone, or why certain accounts were not closed until several months after the fraud was discovered. As we stated, *supra*, Akins testified regarding payments made on several of the fraudulent accounts. Nextel provided Akins with the total amount billed to each account for monthly service but not collected. Berry does not argue that Nextel did not make air time available for each telephone on a monthly basis. She therefore, fails to explain how the terms of any promotion period or the number of minutes used by each telephone are relevant to the amount of Nextel's loss. *See* U.S.S.G. § 2B1.1, cmt. n.2 (1997) ("[W]hen property is taken or destroyed the loss is the fair market value of the particular property at issue."). Berry has also failed to substantiate her assertion that Nextel benefitted from keeping the fraudulent accounts open until Berry's sentencing because the failure to terminate service to the telephones resulted in an increased restitution award. Akins testified that the nature of Berry's fraudulent scheme made it difficult for Nextel to determine which accounts were fraudulent and how many telephones were associated with the fraudulent accounts.

Finally, Berry summarily argues that the government did not prove the amount of the loss by a preponderance of the evidence. Because we find Berry's more specific arguments to be meritless, this argument also fails.

**IV. Conclusion**

"For the purposes of [§ 2F1.1(b)(1)], the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2F1.1, cmt. n.8 (1997). This court concludes that the factual findings relating to amount of loss made by the district court at Berry's sentencing hearing are supported by reliable information in the record and are not clearly erroneous. Accordingly, the sentence imposed by the district court is hereby **affirmed** .

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge